[Cite as *House v. Iacovelli*, 2018-Ohio-443.]

| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
|---|---|---|
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF MEDINA | ) | |

| | | |
|---|---|---|
| CHRISTINE HOUSE | | C.A. No.      16CA0087-M |
|      Appellant | | |
| v. | | APPEAL FROM JUDGMENT ENTERED IN THE |
| BRUCE IACOVELLI, et al. | | COURT OF COMMON PLEAS COUNTY OF MEDINA, OHIO |
|      Appellees | | CASE No.      15CIV0781 |

DECISION AND JOURNAL ENTRY

Dated: February 5, 2018

CARR, Presiding Judge.

{¶1} Appellant, Christine House, appeals the judgment of the Medina County Court of Common Pleas. This Court affirms in part, reverses in part, and remands.

I.

{¶2} On August 7, 2015, House filed a complaint against Iacovelli and Windward Enterprises alleging claims of wrongful termination, conversion, and violations of the Fair Labor Standards Act. Iacovelli promptly filed an answer generally denying the claims in the complaint.

{¶3} With leave of court, House filed an amended complaint alleging a sole count of wrongful termination in violation of public policy. House alleged that Iacovelli had refused to comply with multiple provisions in R.C. Chapter 4141 by failing to accurately report House's income and make the requisite contributions to Ohio's unemployment compensation insurance program. The allegations centered on House's tenure as a server at the Riverstone Tavern, a restaurant that is operated by Iacovelli and his business, Windward Enterprises. House worked

35 to 50 hours per week and was paid at a variable hourly rate that accounted for her ability to collect tips depending on the time of the shift. House alleged that she approached Iacovelli to address concerns about the payroll not accurately reflecting the amount of pay and tips that she had earned. Iacovelli admitted that he had failed to pay for all of House's unemployment compensation insurance under Ohio law. The amended complaint specified that Iacovelli admitted to underreporting her income by $11,000. House further alleged that instead of addressing the issue, Iacovelli accused House of creating "too much drama" and terminated her employment. After she was fired, Iacovelli urged House to mislead the Ohio Department of Jobs and Family Services ("ODJFS") by stating that she was terminated for "lack of work" in order to qualify for unemployment benefits. In exchange for her cooperation in this ploy, Iacovelli offered to pay House $150 every two weeks to offset her refused unemployment compensation due to Iacovelli's failure to make adequate payments under the unemployment compensation insurance program. House stressed in her amended complaint that she did not agree to participate in Iacovelli's "joint schemes to defraud the government and cheat her out of employment benefits."

{¶4} Iacovelli initially filed a motion to dismiss the amended complaint pursuant to Civ.R. 12(B)(6). House filed a brief in opposition to the motion. The trial court issued a journal entry denying the motion to dismiss on August 18, 2016.

{¶5} When Iacovelli did not file an answer to the amended complaint within fourteen days of the denial of the motion to dismiss, House filed a motion for default judgment. Iacovelli promptly filed a motion for leave to file an answer instanter and objection to the motion for default judgment. The trial court issued a journal entry granting Iacovelli's motion and recognizing the filing of the answer to the amended complaint.

{¶6} Thereafter, Iacovelli filed a second "motion to dismiss" wherein he argued that he should be dismissed from the lawsuit because the nature of House's claim implicated only Windward Enterprises as a corporate entity and not Iacovelli in his individual capacity. The trial court denied the motion on the basis that it was untimely and Iacovelli had failed to obtain leave of court. In so doing, the trial court noted that the matter was set for trial on October 17, 2016, and that Iacovelli had not filed his motion until September 23, 2016.

{¶7} On October 3, 2016, Iacovelli filed a motion for a pretrial determination regarding the first two elements of House's wrongful termination claim. Iacovelli stressed that the trial court should hold a pretrial hearing because the clarity and jeopardy elements of House's claim involved questions of law. In the alternative, Iacovelli requested that the trial court reopen summary judgment proceedings. House filed multiple briefs in opposition to Iacovelli's motion for a pretrial determination. The trial court subsequently issued a journal entry wherein it scheduled the matter for a non-oral hearing and set a deadline for the filing of briefs and memoranda. Thereafter, House filed a "position statement on public policy at issue[.]" Iacovelli filed a responsive brief in support of his motion for a pretrial determination. On November 21, 2016, the trial court issued a journal entry concluding that while House satisfied the clarity element in support of her public policy wrongful termination claim, she had failed to satisfy the jeopardy as a matter of law. The trial court dismissed the sole claim in the amended complaint.

{¶8} On appeal, House raises three assignments of error.

II.

## ASSIGNMENT OF ERROR I

THE TRIAL COURT ERRED TO THE PREJUDICE OF THE APPELLANT BY DISMISSING THE PUBLIC TORT CLAIM UNDER THE THEORY THE APPELLANT COULD NOT PROVE THE JEOPARDY ELEMENT OF THE

CLAIM WAS SATISFIED BECAUSE OF THE ADEQUACY OF THE STATUTORY REMEDIES.

{¶9} In her first assignment of error, House contends that the trial court erred by dismissing this matter on the grounds that she could not satisfy the jeopardy element of her wrongful termination claim. House argues that the statutory remedies set forth in R.C. 4141.27 fail to adequately protect society's public policy interest in establishing and maintaining an unemployment compensation program. This Court agrees.

{¶10} In *Greeley v. Miami Valley Maint. Constrs*., Inc., 49 Ohio St.3d 228 (1990), the Supreme Court of Ohio set forth a public policy exception to the employment at will doctrine and held that an employee could maintain a private cause of action against an employer when the employee is discharged or disciplined for a reason which is proscribed by statute. *Greeley* at paragraph one of the syllabus. Though *Greeley* dealt with a statutory based claim, the court specified that a private cause of action for wrongful discharge need not be predicated on a violation of a specific statute. *Greeley* at 235. While the high court grappled with the scope of the public policy exception in a number of decisions that followed *Greeley*, the court ultimately reaffirmed its prior precedent and held that "an exception to the employment-at-will doctrine is justified where an employer has discharged his employee in contravention of a 'sufficiently clear public policy.'" *Painter v. Graley*, 70 Ohio St.3d 377, 384 (1994).

{¶11} In determining whether a plaintiff could maintain a public policy claim, the Supreme Court has relied on the standard established in *Collins v. Rizkana*, 73 Ohio St.3d 65 (1995). *See Wiles v. Medina Auto Parts*, 96 Ohio St.3d 240. The high court has stated that the following four elements must be present in order to establish a public policy wrongful termination claim:

1. That [a] clear public policy existed and was manifested in a state or federal constitution, statute or administrative regulation, or in the common law (the *clarity* element).

2. That dismissing employees under circumstances like those involved in the plaintiff's dismissal would jeopardize the public policy (the *jeopardy* element).

3. The plaintiff's dismissal was motivated by conduct related to the public policy (the *causation* element).

4. The employer lacked overriding legitimate business justification for the dismissal (the *overriding justification* element)."

(Emphasis sic.) (Internal citations and quotations omitted). *Urda v. Buckingham, Doolittle, & Burroughs*, 9th Dist. Summit No. 23226, 2006-Ohio-6915, ¶ 15, quoting *Collins* at 69-70.

{¶12} The clarity and jeopardy elements "involve relatively pure law and policy questions." *Collins* at 70. It is well settled that the clarity and jeopardy elements of the test are issues for the trial court's determination; while the causation and overriding justification elements are questions for determination by the fact finder. *Dohme v. Eurand Am., Inc.*, 130 Ohio St.3d 168, 2011-Ohio-4609, ¶ 17, citing *Collins* at 70.

**Background**

{¶13} In its November 21, 2016 order dismissing House's amended complaint, the trial court determined that House satisfied the clarity element because there is a clear public policy manifested in a state statute that employers should accurately report employees' pay and tips to the Ohio Bureau of Unemployment Compensation. With respect to the jeopardy element, however, the trial court determined that House failed to satisfy that element of her claim for wrongful termination as a matter of law. In reaching this conclusion, the trial court reasoned that "there already exists a statutory remedy that adequately protects society's interests[] [as] R.C. 4141.27 provides that the Attorney General may bring such actions for violations of R.C. 4141.01 to R.C. 4141.46."

**Discussion**

**{¶14}** At the outset, we note that Iacovelli's "motion for a pretrial determination" was not a valid motion under the Ohio Rules of Civil Procedure. A defendant may challenge the plaintiff's ability to satisfy the clarity and jeopardy elements in a wrongful termination/retaliation action in multiple ways, including a Civ.R. 12 motion or a motion for summary judgment filed pursuant to Civ.R. 56(C). *See generally Coon v. Tech. Constr. Specialties, Inc.*, 9th Dist. Summit No. 22317, 2005-Ohio-4080, ¶ 4-5, 26 (addressing the jeopardy element in a motion for judgment on the pleadings); *Giannini-Baur v. Schwab Ret. Plan Servs.*, 9th Dist. Summit No. 25172, 2010-Ohio-6424, ¶ 28 (addressing the clarity element at the summary judgment stage). In this case, however, Iacovelli waited until after the deadline for the filing of dispositive motions and then filed a motion seeking the dismissal of the amended complaint on the basis that House could not satisfy the clarity and jeopardy elements of her claim. Nevertheless, despite having denied a prior motion to dismiss on the basis that it was untimely, the trial court entertained the "pretrial determination" motion and ultimately dismissed the action on the grounds that House could not satisfy the jeopardy element of her claim as a matter of law.

**{¶15}** As Iacovelli's motion raised purely legal issues, this Court applies a de novo standard of review. *See Eagle v. Fred Martin Motor Co.*, 157 Ohio App.3d 150, 2004-Ohio-829, ¶ 11. When reviewing a matter de novo, this court does not give deference to the trial court's decision. *Id.*

**{¶16}** The Supreme Court of Ohio has explained that analyzing the jeopardy element of a public policy wrongful termination action requires assessing whether prohibiting the action from going forward would compromise the objectives of the public policy in question. *Wiles v. Medina Auto Parts*, 96 Ohio St.3d 240, 244. Thus, "[a]n analysis of the jeopardy element

necessarily involves inquiring into the existence of any alternative means of promoting the particular public policy to be vindicated by the common-law wrongful discharge claim." *Wiles* at 244. The public policy expressed in a statute is not jeopardized by the absence of a wrongful termination action when the aggrieved employee "has an alternate means of vindicating his or her statutory rights[,] [] thereby discouraging an employer from engaging in the unlawful conduct." *Id.* "*Wiles* made clear that the method to determine whether a plaintiff can file statutory and public policy causes of action involves reviewing the adequacy of the remedy, not ensuring the aggrieved party receives the greatest recovery." *Coon*, 2005-Ohio-4080, at ¶ 23, citing *Wiles* at 248. "[A] remedy is not inadequate merely because it does not allow for all avenues of recovery." *Coon* at ¶ 22.

{¶17} In *Wiles*, the Supreme Court concluded that recognizing a common law tort action was unnecessary because the statute in question, the Family and Medical Leave Act, included a comprehensive remedial scheme that provided the employee with "a meaningful opportunity to place himself or herself in the same position the employee would have been absent the employer's violation of the FMLA." *Wiles* at 245. Specifically, the statute allowed the employee to recover "(1) compensatory damages for the salary he lost following his demotion, (2) liquidated damages * * *, (3) prejudgment interest, (4) reasonable attorney fees, and (5) appropriate equitable relief, including front pay and/or reinstatement to the managerial position he held prior to taking his FMLA leave." *Id.* Relying on *Wiles*, this Court similarly held that a separate public policy cause of action was unnecessary for a violation of the worker's compensation retaliation statute set forth in R.C. 4123.90 because the statutory remedies provided the employee with "a 'meaningful opportunity' to return to the same position he was in prior to the adverse action by the employer." *Coon* at ¶ 26, quoting *Wiles* at 245.

{¶18} In this case, the trial court erred by concluding that House could not satisfy the jeopardy element of her claim. The trial court dismissed the amended complaint solely on the grounds that society's interests are adequately protected by R.C. 4141.27. Though R.C. 4141.27 does set forth the procedure by which the Attorney General may file suit against noncomplying employers, the statute makes no mention of remedies available to the aggrieved employee when the employer refuses to comply. While Iacovelli cites to this Court's decision in *Coon* in defense of the trial court's judgment, we emphasized in *Coon* that "the purpose of a remedy in a wrongful termination case is * * * to deter the employer from violating the law and to place the employee in the position they would have been had the employer not violated the law." *Coon* at ¶ 26. R.C. 4141.27 does not contain any provision that would provide House with a "meaningful opportunity" to return to the position she occupied prior to the adverse employment action. *See Coon* at ¶ 26, citing *Wiles* at 245. Iacovelli suggests that the statute sets forth a private remedy in R.C. 4141.281(A), which allows an employee to file an administrative appeal of the determination of unemployment compensation "benefit rights" by the director of the ODJFS. It stands to reason that the first step an employee would take upon noticing a payroll discrepancy is to raise that issue with their employer. While the administrative appeal process provides a viable mechanism to challenge a determination of benefits, it fails to set forth a remedial scheme for a situation such as this where an employee is terminated merely for inquiring about why her pay did not reflect the amount she had earned. Under these circumstances, we cannot accept Iacovelli's contention that the administrative appeal process provides House with a meaningful opportunity to return to the position she was in prior to the time she approached Iacovelli with her concerns.

{¶19} Moreover, the particular circumstances of this case illustrate why disallowing House to proceed with her claim could have a chilling effect on the willingness of employees to report violations. House alleged in the amended complaint that when she approached Iacovelli to address discrepancies with her pay, Iacovelli admitted to underreporting her income and failing to make payments to the unemployment compensation insurance fund. Instead of rectifying the issue, Iacovelli not only terminated House on account of the fact that she was creating "too much drama," but also attempted to leverage House into participating in a scheme where she would be compensated for intentionally misleading the ODJFS. Absent adequate statutory remedies, House must be allowed to pursue a public policy wrongful termination claim in order to avoid fostering an environment where employees face the prospect of losing their jobs when they seek to obtain the benefits they have earned under the law.

{¶20} House's first assignment of error is sustained.

### ASSIGNMENT OF ERROR III

THE TRIAL COURT ERRED TO THE PREJUDICE OF THE APPELLANT BY NOT GRANTING A MOTION FOR DEFAULT JUDGMENT GIVEN [THAT] THE APPELLEE FAILED TO FILE AN ANSWER ON TIME AFTER ITS MOTION TO DISMISS WAS OVERRULED.

{¶21} In her third assignment of error, House contends that the trial court erred when it denied her motion for default judgment. This Court disagrees.

{¶22} A trial court's ruling on a motion for default judgment is reviewed for an abuse of discretion. *Deutsche Bank Nat'l Trust Co. v. Patrino*, 9th Dist. Summit No. 24183, 2008-Ohio-5235, ¶ 6. An abuse of discretion is more than an error of judgment; it means that the trial court was unreasonable, arbitrary, or unconscionable in its ruling. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983). When applying the abuse of discretion standard, this Court may not

substitute its judgment for that of the trial court. *Pons v. Ohio State Med. Bd.*, 66 Ohio St.3d 619, 621 (1993).

{¶23} As noted above, Iacovelli initially filed a motion to dismiss the amended complaint pursuant to Civ.R. 12(B)(6). The trial court issued an order denying the motion on August 18, 2016. Shortly thereafter, on September 8, 2016, House filed a motion for default judgment wherein she argued that judgment should be rendered in her favor because Iacovelli failed to file an answer to the amended complaint with 14 days of the denial of the motion to dismiss as required by Civ.R. 12(A)(2). The next day, Iacovelli filed a motion for leave to file an answer instanter as well as a brief in opposition to the motion for default judgment. The trial court granted Iacovelli's motion and deemed the answer admitted.

{¶24} On appeal, House contends that the trial court should have granted the motion for default judgment given the "lop sided unfairness allowed to [Iacovelli]" during the course of the trial court proceedings. House's argument is not well taken. This case does not involve a scenario where the defendant "failed to plead or otherwise defend" as contemplated by Civ.R. 55(A). Prior to the filing of House's motion for default judgment, Iacovelli had keenly litigated the dispute by filing an answer to the original complaint, as well as a motion to dismiss the amended complaint. Moreover, though Iacovelli did not immediately file an answer to the amended complaint subsequent to the trial court's denial of his motion to dismiss, Iacovelli promptly responded to the motion for default judgment by filing his answer the following day. Under these circumstances, where Iacovelli showed a commitment to vigorously defending the lawsuit, the trial court did not abuse its discretion by permitting Iacovelli to file an answer to the amended complaint and rejecting the motion for default judgment.

{¶25} The third assignment of error is overruled.

**ASSIGNMENT OF ERROR II**

THE TRIAL COURT ERRED TO THE PREJUDICE OF THE APPELLANT BY GRANTING A MOTION TO QUASH A SUBPOENA SEEKING UNEMPLOYMENT COMPENSATION RECORDS RELATING TO THE APPELLEE'S EMPLOYMENT OF THE APPELLANT AND BY FINDING IN EFFECT OHIO R.C. 4141.21 IS UNCONSTITUTIONAL.

{¶26}   House withdrew her second assignment of error at oral argument.

III.

{¶27}   House's first assignment of error is sustained.  The second assignment of error is withdrawn.  The third assignment of error is overruled.  The judgment of the Medina County Court of Common Pleas is affirmed in part, reversed in part, and the cause remanded for further proceedings consistent with this decision.

Judgment affirmed in part
reversed in part,
and cause remanded.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Medina, State of Ohio, to carry this judgment into execution.  A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run.  App.R. 22(C).  The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed equally to both parties.

DONNA J. CARR
FOR THE COURT

TEODOSIO, J.
CALLAHAN, J.
CONCUR.

APPEARANCES:

MICHAEL T. CONWAY, Attorney at Law, for Appellant.

MICHAEL DEWINE, Attorney General, and SUSAN M. SHEFFIELD, Assistant Attorney General, for Appellee.

WILLIAM STEIGER II and STEVE C. BAILEY, Attorneys at Law, for Appellees.