[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *House v. Iacovelli,* Slip Opinion No. 2020-Ohio-435.]

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports. Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2020-OHIO-435

HOUSE, APPELLEE, *v*. IACOVELLI ET AL., APPELLANTS.

[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *House v. Iacovelli,* Slip Opinion No. 2020-Ohio-435.]

*Torts—Wrongful termination in violation of public policy—Employee terminated after questioning employer's failure to accurately report earnings to Bureau of Unemployment Compensation—Employee failed to meet jeopardy element of claim for wrongful termination—R.C. Chapter 4141 does not contain a personal remedy for an employee when employer fails to accurately report earnings—Remedies in statutes sufficiently protect society's interest in discouraging employers from engaging in prohibited behavior.*

(No. 2018-0434—Submitted April 23, 2019—Decided February 12, 2020.)

APPEAL from the Court of Appeals for Medina County,

No. 16CA0087-M, 2018-Ohio-443.

_____

**FISCHER, J.**

{¶ 1} We accepted this discretionary appeal to address whether appellee, Christine House, can maintain a claim for wrongful termination in violation of public policy based upon an allegation that her employer unlawfully terminated her employment because she had confronted the employer for failing to report accurately her earnings to the Bureau of Unemployment Compensation as required by R.C. Chapter 4141. We conclude that the dismissal of employees under circumstances such as those involved in this case does not jeopardize any public policy that employers must accurately report employees' pay and tips to the Bureau of Unemployment Compensation. Therefore, we determine that House's wrongful-termination-in-violation-of-public-policy claim fails and reverse the judgment of the Ninth District Court of Appeals.

## I. Background

### A. House's Employment

{¶ 2} House worked as an employee at the Riverstone Taverne, a restaurant operated by appellant Bruce Iacovelli and owned by his business, appellant Windward Enterprises, Inc. House alleged in her complaint that she approached Iacovelli regarding the accuracy of the payroll. Iacovelli soon thereafter terminated House's employment, allegedly because she created "drama."

{¶ 3} House claimed that Iacovelli had underreported her income to the state. If her income was underreported, House would receive less unemployment compensation than what she would have been entitled to otherwise receive.

### B. Trial-Court Proceedings

{¶ 4} House filed a complaint against Iacovelli for conversion, violations of the Fair Labor Standards Act, 29 U.S.C. 201 et seq., and wrongful termination in violation of public policy. House amended her complaint to include Windward Enterprises as a defendant and to proceed solely on the claim of wrongful termination in violation of public policy. She asserted in her amended complaint

that the appellants' conduct amounted to "a violation of Ohio public policy expressed or gleaned from statutes under Ohio R.C. Chapter 4141 related to employer obligations to make payment of unemployment compensation insurance premiums, and the common law of wrongful termination in violation of Ohio public policy."

{¶ 5} After unsuccessfully moving to dismiss House's complaint, the appellants moved the trial court to determine whether House's claim met the elements of the tort of wrongful termination in violation of public policy. House opposed the motion.

{¶ 6} The trial court determined that House could not maintain her claim. The court determined that while there is a clear public policy manifested in the provisions of R.C. Chapter 4141 that employers should accurately report employees' pay and tips to the Bureau of Unemployment Compensation (the clarity element of the tort of wrongful termination in violation of public policy), dismissing employees under circumstances like those involved in House's dismissal would not jeopardize the stated public policy (the jeopardy element of the tort). The trial court concluded that because R.C. 4141.27 sets forth a remedy for violating the public policy embodied in the statute and the remedy adequately protects society's interests, House's tort claim necessarily failed. Therefore, the court dismissed House's complaint.

*C. Appellate-Court Proceeding*

{¶ 7} House appealed the judgment of the trial court. She asserted that the trial court erred in dismissing her wrongful-termination-in-violation-of-public-policy claim on the theory that the jeopardy element was not met. The Ninth District sustained House's assignment of error and reversed the trial court's dismissal of her complaint.

{¶ 8} The Ninth District determined that the trial court erred by concluding that House could not satisfy the jeopardy element. The appellate court concluded

that the statutory remedies contained in R.C. Chapter 4141 were insufficient to provide House with a meaningful opportunity to return to the position she had occupied prior to the adverse employment action.

{¶ 9} The Ninth District found that "[a]bsent adequate statutory remedies, House must be allowed to pursue a public policy wrongful termination claim in order to avoid fostering an environment where employees face the prospect of losing their jobs when they seek to obtain the benefits they have earned under the law." 2018-Ohio-443, 94 N.E.3d 599, ¶ 19. The appellate court reasoned that a decision to the contrary might have a chilling effect on the willingness of employees to report such violations.

## II. Analysis

{¶ 10} We accepted the following proposition of law: "That in a wrongful termination action under *Greeley v. Miami Valley* [*Maintenance Contrs.*], 49 Ohio St. 3d 228 [552 N.E.2d 981] (1990), the jeopardy element is not met when statutes provide for the protection of the public policy, even when they provide no direct remedy for an employee herself." 153 Ohio St.3d 1429, 2018-Ohio-2418, 100 N.E.3d 446.

### A. Wrongful Termination in Violation of Public Policy

{¶ 11} The employment-at-will doctrine, the rule that general or indefinite hiring is terminable at the will of either party for any cause or no cause, is the traditional rule in Ohio. *Collins v. Rizkana*, 73 Ohio St.3d 65, 67-68, 652 N.E.2d 653 (1995). The tort of wrongful termination in violation of public policy, also known as a *Greeley* claim, is an exception to the employment-at-will doctrine. *Greeley* at 234.

{¶ 12} In order for a plaintiff to succeed on a wrongful-termination-in-violation-of-public-policy claim,

a plaintiff must establish four elements: (1) that a clear public policy existed and was manifested either in a state or federal constitution, statute or administrative regulation or in the common law ("the clarity element"), (2) that dismissing employees under circumstances like those involved in the plaintiff's dismissal would jeopardize the public policy ("the jeopardy element"), (3) the plaintiff's dismissal was motivated by conduct related to the public policy ("the causation element"), and (4) the employer lacked an overriding legitimate business justification for the dismissal ("the overriding-justification element").

*Miracle v. Ohio Dept. of Veterans Servs.*, 157 Ohio St.3d 413, 2019-Ohio-3308, 137 N.E.3d 1110, ¶ 12; *see Collins* at 69-70. The clarity and jeopardy elements are questions of law to be determined by the court. *Collins* at 70. The causation and overriding-justification elements are, however, questions to be determined by the finder of fact. *Id.*

### B. Clarity Element

{¶ 13} We note that neither House nor the appellants appealed the trial court's legal determination that House had met the clarity element. According to the trial court, there is a clear public policy, manifested in the provisions of R.C. Chapter 4141, that employers should accurately report employees' pay and tips to the Bureau of Unemployment Compensation. The appellate court did not disturb the trial court's determination on appeal.

{¶ 14} While some may question whether the public policy identified by the trial court in this case is sufficient to establish the clarity element in light of this court's recent opinion in *Miracle*, we do not address that matter in this decision, because the issue is not before this court. Therefore, we presume the clarity element

is satisfied and move on to the analysis of the jeopardy element of House's wrongful-discharge-in-violation-of-public-policy claim.

*C. Jeopardy Element*

{¶ 15} Under the jeopardy-element analysis, we determine whether dismissing employees under circumstances like those involved in House's dismissal would jeopardize the public policy expressed in R.C. Chapter 4141 that employers should accurately report employees' pay and tips to the Bureau of Unemployment Compensation. *See Collins*, 73 Ohio St.3d at 70, 652 N.E.2d 653. We conclude that a dismissal under these circumstances does not jeopardize the public policy identified by the trial court.

{¶ 16} The jeopardy-element analysis generally involves inquiring into the existence of any alternative means of promoting the particular public policy to be vindicated by a wrongful-termination-in-violation-of-public-policy claim. *Wiles v. Medina Auto Parts,* 96 Ohio St.3d 240, 2002-Ohio-3994, 773 N.E.2d 526, ¶ 15 (lead opinion). When the sole source of the public policy is a statutory scheme that provides rights and remedies for its breach, as it is here, we must consider whether those remedies are adequate to protect society's interest as to the public policy. *Wiles* at ¶ 15; *see Collins* at 73. It is less likely that a wrongful-termination-in-violation-of-public-policy claim is necessary when remedies for statutory violations are included in the statutory scheme. *Id.* at ¶ 15 ("there is no need to recognize a common-law-action for wrongful discharge if there already exists a statutory remedy that adequately protects society's interests"). This is especially true "when remedy provisions are an essential part of the statutes upon which the plaintiff depends for the public policy claim and when those remedies adequately protect society's interest by discouraging the wrongful conduct." *Leininger v. Pioneer Natl. Latex*, 115 Ohio St.3d 311, 2007-Ohio-4921, 875 N.E.2d 36, ¶ 27.

{¶ 17} House's wrongful-termination-in-violation-of-public-policy claim was based on multiple provisions in R.C. Chapter 4141, specifically R.C. 4141.20,

4141.24, 4141.27, 4141.30, 4141.37, 4141.38, 4141.40, and 4141.99. After reviewing R.C. Chapter 4141, it is apparent that the General Assembly has provided remedies that discourage employers from inaccurately reporting employees' pay and tips to the Bureau of Unemployment Compensation (violating R.C. Chapter 4141) and that punish employers who fail to comply with the requirements in R.C. Chapter 4141. For example, R.C. 4141.20(B) orders the director of Job and Family Services to assess a forfeiture to the employer, amounting to .25 of 1 percent of the total remuneration reported by the employer, not less than $50 and no more than $1,000, for failing to properly file the quarterly contribution and wage report. Further, R.C. 4141.27 sets forth a detailed process by which the director, through the attorney general, may institute a civil action against an employer who has failed to comply with the sections of R.C. Chapter 4141. Finally, R.C. 4141.99 provides that for various violations of R.C. Chapter 4141, the employer may be subjected to fines or criminal penalties. The question becomes whether these statutory remedies, which do not include a personal remedy for a dismissed employee, adequately discourage the employer's wrongful conduct and are sufficient to protect society's interests in ensuring employers accurately report employees' pay and tips to the Bureau of Unemployment Compensation. *See Leininger*, 115 Ohio St.3d 311, 2007-Ohio-4921, 875 N.E.2d 36, at ¶ 27.

{¶ 18} House argues that the remedies in R.C. Chapter 4141 are insufficient to protect her or society's interests and to discourage wrongful conduct by an employer. She contends that the public policy is jeopardized and a wrongful-termination-in-violation-of-public-policy claim is necessary because there is no personal remedy to protect employees who were dismissed after informing their employers of R.C. Chapter 4141 violations. We disagree. In this circumstance, looking only at the public policy and R.C. Chapter 4141, a personal remedy is not necessary to discourage wrongful conduct by employers and the remedies in the statute are sufficient to protect society's interest in the public policy that employers

should accurately report employees' pay and tips to the Bureau of Unemployment Compensation.

{¶ 19} In addressing the jeopardy prong of the wrongful-termination-in-violation-of-public-policy tort, we have previously looked to see whether the statutory scheme contains a sufficient personal remedy for the aggrieved employee. *See Leininger* at ¶ 14, citing *Livingston v. Hillside Rehab. Hosp.*, 79 Ohio St.3d 249, 680 N.E.2d 1220 (1997). However, in such instances, this court has focused only on the existence of a personal remedy for the employee in circumstances that involved public policies that protect substantial rights of the employee. *See Wiles,* 96 Ohio St.3d 240, 2002-Ohio-3994, 773 N.E.2d 526, at ¶ 17 (Family and Medical Leave Act, 29 U.S.C. 2601 et seq.); *Kulch v. Structural Fibers, Inc.*, 78 Ohio St.3d 134, 677 N.E.2d 308 (1997) (Occupational Safety and Health Act ("OSHA"), 29 U.S.C. 651 et seq.); *Pytlinski v. Brocar Prods., Inc.*, 94 Ohio St.3d 77, 80, 760 N.E.2d 385 (2002) (OSHA); *Leininger* (age discrimination); *Collins*, 73 Ohio St.3d at 73, 652 N.E.2d 653 (sexual harassment and discrimination); and *Bickers v. W. & S. Life Ins. Co.*, 116 Ohio St.3d 351, 2007-Ohio-6751, 879 N.E.2d 201 (workers' compensation).

{¶ 20} The public policy identified by the trial court in this case, uncontested by the parties, is not like the public policies that this court recognized in *Kulch*, *Collins*, *Wiles*, *Leininger*, and *Bickers*, which specifically protect employees. Instead, the public policy announced in this case protects a particular government interest: the accurate reporting of employees' wages to the Bureau of Unemployment Compensation. The lack of a personal remedy in the statutory scheme does not jeopardize the policy because the remedies contained in the statute sufficiently protect society's interest and discourage employers from engaging in the prohibited behavior.

{¶ 21} But even assuming that we were to grant House's remedy and order the appellees to pay damages, or were to hypothetically order House's

reinstatement, such a personal remedy may only discourage retaliation, i.e. termination, for confronting the appellants about their failure to accurately report her wages. A personal remedy *may not*, however, be sufficient to prevent the public policy from being jeopardized. The appellants could still decide not to pay into the unemployment-compensation fund, and the issue of the appellants' failure to comply with R.C. Chapter 4141 would still not be resolved. The existence of a wrongful-termination-in-violation-of-public-policy claim would not act as sufficient encouragement to ensure that employers accurately report their employees' pay and tips to the Bureau of Unemployment Compensation. As we have stated above, the mechanism protecting the public policy in this case is the statutory scheme enacted by the General Assembly, which is specifically aimed at ensuring that all employers comply with their statutory duties. Thus, the public policy stated in this case is not jeopardized by the lack of either a personal remedy for employees like House or the existence of a wrongful-termination-in-violation-of-public-policy claim in this circumstance.

{¶ 22} While House may have sought to assert a claim based on a public policy protecting employees embodied in other statutes or administrative code sections, she did not raise any such claims. We must recognize that R.C. Chapter 4141 does not contain a whistleblower provision and does not serve to protect the employee. *See Kaminski v. Metal Wire Prods. Co.*, 125 Ohio St.3d 250, 2010-Ohio-1027, 927 N.E.2d 1066, ¶ 61 ("it is not the role of the courts to establish their own legislative policies or to second-guess the policy choices made by the General Assembly"). Had the General Assembly wished to create substantive rights for the employee in this case, it could have done so. Simply stated, the public policy recognized by the trial court is sufficiently protected by the remedies in R.C. Chapter 4141.

{¶ 23} Therefore, we hold that the remedies in R.C. Chapter 4141 are sufficient to protect the public policy requiring employers to accurately report

employees' pay and tips to the Bureau of Unemployment Compensation and that the lack of a personal remedy for the employee does not jeopardize the public policy. We conclude that House's dismissal does not jeopardize the public policy identified by the trial court and that House cannot satisfy the jeopardy element of her wrongful-termination-in-violation-of-public-policy claim.

### III. Conclusion

{¶ 24} We conclude that House has not met the jeopardy element of her wrongful-termination-in-violation-of-public-policy claim because the remedies in R.C. Chapter 4141 are sufficient to protect society's interest in the public policy that employers should accurately report employees' pay and tips to the Bureau of Unemployment Compensation and the lack of a personal remedy in R.C. Chapter 4141 for the dismissed employee does not jeopardize the stated public policy. Accordingly, we reverse the judgment of the Ninth District Court of Appeals and conclude that the trial court properly dismissed House's wrongful-termination-in-violation-of-public-policy claim.

Judgment reversed.

O'CONNOR, C.J., and FRENCH and DEWINE, JJ., concur.

KENNEDY, J., concurs in judgment only.

STEWART, J., dissents, with an opinion joined by DONNELLY, J.

_____

**STEWART, J., dissenting.**

{¶ 25} The majority concludes that the administrative remedies found in R.C. Chapter 4141 sufficiently "protect society's interest in the public policy that employers should accurately report employees' pay and tips to the Bureau of Unemployment Compensation and the lack of a personal remedy in R.C. Chapter 4141 for the dismissed employee does not jeopardize the stated public policy." Majority opinion at ¶ 24. I fail to see how the administrative remedies in R.C. Chapter 4141 adequately protect the public policy of ensuring an employer's

accurate and honest wage reporting without allowing a remedy for appellee, Christine House, and others like her, who may have been fired for reporting this kind of employer misconduct. I therefore dissent from the majority's conclusion that House cannot establish the jeopardy component of her claim for wrongful termination in violation of public policy.

### I. An Individual Remedy for the Employee

{¶ 26} For an employee to engage in conduct that furthers a public policy—either by exercising one's right to engage in the policy (e.g., taking leave under the Family and Medical Leave Act ("FMLA")) or objecting to an employer's violation of a policy (e.g., reporting violations under the Occupational Safety and Health Administration)—without the threat of retaliation discouraging that conduct, there must be a remedy available to the employee if an employer were to engage in a retaliatory discharge. *See* H. Perritt, *Employee Dismissal Law and Practice*, Section 7.07[A], at 7-126 to 7-127 (6th Ed.2018).[1] The employee's remedy, whatever form it might take (e.g., a private right of action or an administrative appeal) and whatever relief might be available (e.g., reinstatement of employment, compensatory damages, or punitive damages), must be enough to overcome the threat of retaliation. *See id.*

{¶ 27} The assertion by appellants, Bruce Iacovelli and Windward Enterprises, Inc., that the "jeopardy element is not met when statutes provide for the protection of the public policy, even when they provide no direct remedy for an employee herself," is a dubious one. A statutory remedial scheme that does not

---

1. This court adopted Ohio's four-part framework for determining wrongful-termination-in-violation-of-public-policy claims from a law-review article written by Professor Henry Perritt. *See Collins v. Rizkana*, 73 Ohio St.3d 65, 69-70, 652 N.E.2d 653 (1995), citing H. Perritt, *The Future of Wrongful Dismissal Claims: Where Does Employer Self Interest Lie?*, 58 U.Cin.L.Rev. 397, 398-399 (1989). Since then, we have repeatedly turned to Professor Perritt for his interpretation and analysis of the various components of a wrongful-termination claim. *See*, *e.g.*, *Wiles v. Medina Auto Parts*, *Inc.,* 96 Ohio St.3d 240, 2002-Ohio-3994, 773 N.E.2d 526, ¶ 14-15, and *Pytlinski v. Brocar Prods.*, *Inc.,* 94 Ohio St.3d 77, 80, 760 N.E.2d 385 (2002), fn. 3.

provide any remedy to an aggrieved employee who was fired in contravention of a public policy would seem to fail, as a matter of course, to adequately protect the public policy.

{¶ 28} Indeed, until now, this court seemingly understood this concept. In the past, when examining whether statutory remedies adequately protected the public policy at issue, this court focused on the adequacy of the remedies available to the individual employee. *See Leininger v. Pioneer Natl. Latex*, 115 Ohio St.3d 311, 2007-Ohio-4921, 875 N.E.2d 36, ¶ 33 (holding that the "jeopardy element necessary to support a common-law claim is not satisfied, because R.C. Chapter 4112 adequately protects the state's policy against age discrimination in employment *through the remedies it offers to aggrieved employees*" [emphasis added]); *Wiles v. Medina Auto Parts*, 96 Ohio St.3d 240, 2002-Ohio-3994, 773 N.E.2d 526, ¶ 15, 17 (finding no need to recognize a common-law wrongful-termination claim for an employee who experienced an adverse employment action after taking time off to care for ailing father because the employee had "an alternate means of vindicating his or her statutory rights" by way of the FMLA's remedial scheme, which provided the "*employee with a meaningful opportunity to place himself or herself in the same position the employee would have been absent the employer's violation of the FMLA*" [emphasis added]); *Kulch v. Structural Fibers, Inc.,* 78 Ohio St.3d 134, 155, 677 N.E.2d 308 (1997) (court allowed employee to proceed on common-law wrongful-termination claim, with the lead opinion stating that the statutory "civil remedies set forth in R.C. 4113.52 are *not adequate to fully compensate an aggrieved employee* who is discharged, disciplined, or otherwise retaliated against in violation of the statute" [emphasis added]); *Collins v. Rizkana*, 73 Ohio St.3d 65, 74, 652 N.E.2d 653 (1995) (availability of remedies under R.C. Chapter 4112, which prohibits sexual discrimination, could not serve to defeat employee's wrongful-discharge claim because those remedies, which included equitable relief in the form of reinstatement and back pay, *were not personally*

12

*available to employee* when her employer did not employ the requisite number of employees required to be considered an "employer" within the meaning of the statute).

{¶ 29} The majority opinion distinguishes its decision in the present case from the past decisions cited above by explaining that the public policy at issue in each of those cases protected a substantial right of the employee, whereas in the present case the public policy—requiring accurate reporting of employee wages—exists only to protect a particular governmental interest. According to the majority opinion, only when a substantial right of the employee is at stake will the court "look[] to see whether the statutory scheme contains a sufficient personal remedy for the aggrieved employee." Majority opinion at ¶ 19. The court should be wary of drawing this distinction.

{¶ 30} Generally, governmental interests are those interests that impact the health, safety, and welfare of the community. *State v. Cook*, 83 Ohio St.3d 404, 417, 700 N.E.2d 570 (1998); *see also Miami Cty. v. Dayton*, 92 Ohio St. 215, 223, 110 N.E. 726 (1915). In order to protect these interests, governments promulgate laws prohibiting certain conduct found to be harmful to society. Often, criminal and regulatory laws do not provide substantive rights to any single individual but rather protect society at large. And although criminal and regulatory laws may discourage whatever conduct is prohibited by threatening the imposition of fines and other penalties, many do not provide a personal remedy to an employee who is fired for refusing to violate the law.

{¶ 31} Following the majority opinion to its logical conclusion would foreclose an employee who is fired for refusing to violate the law from bringing a common-law claim for wrongful termination in violation of public policy. This could jeopardize important public policies at the heart of a number of Ohio's laws even if those public policies do not necessarily protect the right of an individual employee.

{¶ 32} For instance, imagine a scenario in which an employee of a chemical-manufacturing company is told by his supervisor to dump toxic waste in the Ohio River. Knowing that this would violate a number of criminal and environmental laws and could harm thousands of people, the employee refuses. If the employee is fired for refusing to comply with his supervisor's demand, according to the majority opinion, that employee would not be able to maintain a common-law wrongful-termination claim. When there is no private remedy for the wrongfully terminated employee, that employee, and others like him, are going to have a difficult choice to make—break the law or be fired for not breaking the law. When the employee has some recourse against his employer for the wrongful termination, this choice becomes much easier, and the employer might think twice before asking an employee to engage in illegal conduct in the first place. *See* Perritt, *Employee Dismissal Law and Practice*, Section 7.07[A], at 7-124 ("The central idea of the public policy tort is to create privately enforceable disincentives for private employers to use their power in the workplace to undermine important public policies").

{¶ 33} It does not matter whether the public policy is intended to protect some right of the employee or is intended to protect a governmental interest, the same analysis applies to the jeopardy component—does the discharge of an employee under the circumstances alleged by a plaintiff jeopardize the public policy. *See Collins*, 73 Ohio St.3d at 70, 652 N.E.2d 653. Regardless of the type of public policy involved, one of the central questions underlying the jeopardy component is whether a privately enforceable remedy for the aggrieved employee is needed to adequately protect the public policy. When the source of the public policy is a statute that contains a remedy for a wrongfully terminated employee, recognizing a claim for wrongful termination in violation of public policy may not be necessary. However, I can find no support in the law for the majority's conclusion that it does not matter whether an adequate personal remedy for

employees exists within the statute when the public policy protects only a governmental interest. This assertion appears to be created to justify the majority's departure from this court's jeopardy analysis in prior decisions.

{¶ 34} However, even if the majority is correct in its assumption that this court treats public policies protecting governmental interests differently than those protecting employee rights, the majority has failed to sufficiently explain why the public policy at issue here does not involve the protection of an employee right. "The fund out of which unemployment compensation is paid to employees is represented entirely by compulsory contributions on the part of employers and is in effect a tax on the privilege of doing business in Ohio." *Leach v. Republic Steel Corp.,* 176 Ohio St. 221, 223, 199 N.E.2d 3 (1964). This court has explained that the purpose of the Ohio Unemployment Compensation Act, R.C. Chapter 4141, and the funds created by the act "is to enable unfortunate employees, who become and remain involuntarily unemployed by adverse business and industrial conditions, to subsist on a reasonably decent level and is in keeping with the humanitarian and enlightened concepts of this modern day." (Emphasis omitted.) *Id.*; *see also Irvine v. Unemp. Comp. Bd. of Rev.*, 19 Ohio St.3d 15, 17, 482 N.E.2d 587 (1985); *Tzangas, Plakas & Mannos v. Ohio Bur. of Emp. Servs.*, 73 Ohio St. 3d 694, 697, 653 N.E.2d 1207 (1995), quoting *Salzl v. Gibson Greeting Cards, Inc.*, 61 Ohio St.2d 35, 39, 399 N.E.2d 76 (1980) (" 'The [A]ct was intended to provide financial assistance to an individual who had worked, was able and willing to work, but was temporarily without employment through no fault or agreement of his own' "). Contrary to the majority's position, this court's earlier case law shows that the public policy behind accurately reporting employee wages *is* meant to protect a substantial right of the employee—the right to receive his fair share of unemployment compensation—in the event of an employee's termination through no fault of his own.

## II. Inadequacy of Statutory Remedies

{¶ 35} Without an individual remedy for the discharged employee, the statutory remedies contained in R.C. Chapter 4141 do not adequately protect against employers who purposefully underreport wages to avoid paying their fair share of unemployment taxes. To begin, although R.C. 4141.99 subjects an employer to possible criminal penalties for certain violations of R.C. Chapter 4141, it does not—as the majority suggests—contain provisions that criminalize the underreporting of wages to avoid paying the requisite unemployment tax. Instead, R.C. 4141.99, along with R.C. 4141.20(B), imposes modest fines on an employer and individuals working for the employer who have failed to properly file a quarterly wage-earning report or pay required contributions to the unemployment fund. *See* R.C. 4141.20(B) (imposing forfeiture of $50 to $1,000, which can be waived by the director of job and family services pursuant to R.C. 4141.20(D)); R.C. 4141.99(C) (imposing a fine of $500 upon an employer or its officer who fails to comply with the requirements of R.C. 4141.38 "relating to the making of reports or the payment of contributions to the unemployment compensation fund"). Given the mild penalties involved, it is not difficult to imagine a scenario in which an unscrupulous employer might choose to forgo its legal obligations by underreporting employee wages when the benefit outweighs the risk. If the allegations in House's complaint are true, that appears to be what has happened here.

{¶ 36} Further, although R.C. 4141.27 permits the director of job and family services, through the attorney general, to bring a civil action against an employer to recover unpaid contributions, including interest, once liability has been determined pursuant to R.C. 4141.26 and the employer still refuses to pay, this section does not penalize the purposeful underreporting of wages. Instead, it is a legal mechanism that the director may use to compel payment from a recalcitrant employer. *See* R.C. 4141.27; *see also* R.C. 131.03.

16

{¶ 37} How the majority concludes that the provisions contained in R.C. 4141.20(B), 4141.99, and 4141.27 serve as deterrents against wage-reporting violations in and of themselves is perplexing. The procedures outlined in R.C. 4141.27 for recovering contributions are activated only "[i]f the director of job and family services finds that * * * an employer subject to [R.C. Chapter 4141] * * * has failed to comply with such sections." *Id.* The little word "if" is a big reason why House's claim has met the jeopardy element under the facts of this case. None of the statutory remedies that the majority finds adequately protect the public policy at issue here are even triggered unless, or until, a violation is made known to the director. It requires no stretch of the imagination to conclude that often an employee will be the only one, other than the employer, to know of a violation. If employees know they can be terminated with no recourse for reporting a potential violation or for cooperating with the Bureau of Unemployment Compensation to uncover a potential violation, it is highly unlikely that they will ever report or cooperate. In turn, employers are unlikely to ever be identified and subjected to the administrative remedies for their wrongdoing. In light of the majority's decision in this case, the General Assembly might as well amend R.C. 4141.27 to apply when "the director just so happens to discover" that an employer subject to R.C. Chapter 4141 failed to comply with the statute.

{¶ 38} In essence, because employee reporting in this instance is necessary for the effective enforcement of the public policy, employees must be protected from retaliatory discharge either by remedies contained in the statutory provisions or by remedies in a common-law tort claim for wrongful termination.

### III. Application of the Majority Decision to the Facts of this Case

{¶ 39} As the majority notes, the jeopardy-element analysis requires the court to determine whether dismissing House under the circumstances involved in this case jeopardizes the public policy expressed in R.C. Chapter 4141. Without any meaningful analysis, the majority goes on to find that the circumstances under

which House was dismissed would not jeopardize the public policy requiring employers to accurately report wage and tip earnings. But a simple application of the law to the alleged facts exposes the majority's error.

{¶ 40} House alleged in her complaint that she was terminated from her job as a waiter at the Riverstone Tavern, where she had worked for over seven years, for confronting Iacovelli, her boss, about underreporting her wage and tip earnings to the Ohio Unemployment Commission's Insurance Fund. If the allegation is true, Iacovelli's conduct violated R.C. 4141.38, which provides that no employer *shall fail to comply* with R.C. Chapter 4141's reporting requirements.

{¶ 41} According to the complaint, after House was terminated, Iacovelli contacted House and counseled her to misrepresent to the Bureau of Unemployment Compensation the true reason for her termination. Specifically, as alleged by House, Iacovelli instructed her to state that she was terminated for lack of work so that she might still be eligible for unemployment benefits. The complaint alleged that Iacovelli told House that he would pay her $150 every two weeks to make up for the reduction in unemployment benefits that she might receive due to his reporting violation. House declined to participate in the alleged scheme and proceeded to bring an action for wrongful termination in violation of public policy.

{¶ 42} These latter allegations are left out of the majority opinion. But they are extremely important because, to be eligible for unemployment benefits under the statute, employee-applicants cannot be found to have quit their employment without just cause or to have been terminated for just cause in connection with their work. R.C. 4141.29(D)(2)(a). When, however, an employee is terminated for "lack of work," that employee's eligibility is preserved. R.C. 4141.29(D)(2)(a)(ii). Moreover, pursuant to the statute, an eligible applicant is entitled to receive unemployment benefits in an amount of up to 50 percent of the person's average weekly wage, the calculation of which derives from the employee's wage as reported by the employer in its quarterly reports. R.C. 4141.30(B).

18

**{¶ 43}** When considering these facts, it is unclear what the majority expected House to do. Had she kept silent about her employer's reporting violation, she would not have received her full unemployment benefits in the event of a no-fault termination. Had House lied to the Bureau of Unemployment Compensation by stating that she was terminated for lack of work, she would have committed a fraudulent misrepresentation in order to obtain benefits—an action that carries its own fines and penalties under R.C. 4141.35. The same is true if she had collected the payments her former employer offered her as hush money. *See id*.; *see also* R.C. 4141.31(A).

**{¶ 44}** If the facts in the complaint are true, House did everything right under the circumstances. Not only did she attempt to discourage unlawful behavior by confronting her employer about its reporting violations, but later, after being fired for her actions, she declined to engage in conduct akin to fraud and bribery even though her unemployed status and diminished capacity to collect unemployment benefits might have put pressure on her to do otherwise. In light of the circumstances in which House was dismissed, I find the majority's assurances that the administrative remedies in R.C. Chapter 4141 protect the public from an employer's wage-reporting violations entirely unconvincing. In my estimation, by refusing to recognize the necessity of a wrongful-termination claim, the majority opinion does more to encourage employer underreporting than the statutory remedy provisions could ever do to discourage it.

DONNELLY, J., concurs in the foregoing opinion.

––––––––––––––––––

Michael T. Conway & Company and Michael Terrance Conway, for appellee.

The Bailey Law Firm and Steve C. Bailey, for appellants.

The Gittes Law Group, Frederick M. Gittes, and Jeffrey P. Vardaro, urging affirmance for amicus curiae Ohio Employment Lawyers Association.

Willis Spangler Starling and Jason E. Starling, urging affirmance for amicus curiae Ohio Association for Justice.

_____