[Cite as *Thomson v. Boss Excavating & Grading, Inc.*, 2021-Ohio-3743.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| Trent Thomson, | : | |
| Plaintiff-Appellant, | : | |
| | | No. 20AP-263 |
| v. | : | (C.P.C. No. 19CV-948) |
| Boss Excavating & Grading, Inc., | : | (REGULAR CALENDAR) |
| Defendant-Appellee. | : | |

D E C I S I O N

Rendered on October 21, 2021

**On brief:** *Stebelton Snider, LPA, Daniel J. Fruth, Abbey M. Becca*, and *Charles M. Elsea*, for appellant. **Argued:** *Mickellea M. Tennis.*

**On brief:** *Kegler, Brown, Hill + Ritter, Brendan P. Feheley*, and *Jane K. Gleaves*, for appellee. **Argued:** *Jane K. Gleaves.*

APPEAL from the Franklin County Court of Common Pleas

DORRIAN, P.J.

{¶ 1}  Plaintiff-appellant, Trent Thomson, appeals the April 28, 2020 decision and entry of the Franklin County Court of Common Pleas granting summary judgment in favor of defendant-appellee Boss Excavating & Grading, Inc. ("Boss").  For the following reasons, we reverse.

I. Facts and Procedural History

{¶ 2}  On January 31, 2019, appellant filed a complaint in the trial court. In his complaint, appellant asserted Boss failed to pay prevailing wage in accordance with R.C. 4115.01 et seq. and wrongfully discharged him in violation of public policy.

{¶ 3}  On March 5, 2019, Boss filed a motion to dismiss appellant's complaint pursuant to Civ.R. 12(B)(6) for failing to exhaust his administrative remedies and, thereby,

failing to state a claim upon which relief could be granted. On March 18, 2019, appellant filed an amended complaint in which he dropped the prevailing wage claim and asserted only a claim for wrongful discharge in violation of public policy. Appellant alleged he worked as a supervisor for Boss on a project in New Albany, Ohio. Between May and November 2018, Boss failed to pay appellant and other Boss employees prevailing wages. Appellant received complaints from the employees he supervised regarding Boss's failure to pay prevailing wage. Appellant relayed these complaints to his superiors multiple times, but the employees were still not paid the proper prevailing wage. On November 5, 2018, appellant alleged he again informed his superiors at Boss regarding the employee complaints, stating that he would contact the Ohio Department of Labor if Boss did not properly pay the employees prevailing wage. According to appellant, Boss immediately fired him. In his amended complaint, appellant alleged that he suffered damages due to his wrongful termination including back pay, front pay, and pain and suffering. Appellant also alleged he is entitled to punitive damages. Appellant demanded judgment for lost wages, punitive damages, reasonable attorney fees and costs. Although appellant did not specifically seek reinstatement, he did request "any additional relief as this Court deems just and proper." (Am. Compl. at 4.) On April 1, 2019, Boss filed an answer to appellant's amended complaint.

{¶ 4} On March 4, 2020, Boss filed a motion for summary judgment. On March 31, 2020, appellant filed a response to Boss's summary judgment motion. On April 28, 2020, the trial court filed a decision and entry granting summary judgment in favor of Boss.

## II. Assignment of Error

{¶ 5} Appellant appeals and assigns the following single error for our review:

> The Trial Court erred in finding that the jeopardy element of a common law wrongful discharge claim is not met here.

## III. Analysis

{¶ 6} In his single assignment of error, appellant challenges the trial court's conclusion that he cannot establish the jeopardy element of his wrongful discharge claim as a matter of law. Appellant argues R.C. Chapter 4115 articulates a substantive right of employees to be paid a prevailing wage. Appellant further argues that the remedies set forth in R.C. Chapter 4115 do not adequately protect his substantive right to be paid a

prevailing wage. Appellant argues the trial court erred in granting summary judgment in favor of Boss on the grounds that the jeopardy element of the common law wrongful discharge in violation of public policy claim had not been met.

### A. Standard of Review

{¶ 7} We review a decision on a motion for summary judgment under a de novo standard. *LRC Realty, Inc. v. B.E.B. Properties*, 160 Ohio St.3d 218, 2020-Ohio-3196, ¶ 11. De novo appellate review means the court of appeals conducts an independent review, without deference to the trial court's decision. *Wiltshire Capital Partners v. Reflections II, Inc.*, 10th Dist. No. 19AP-415, 2020-Ohio-3468, ¶ 12. Summary judgment is appropriate only when the moving party demonstrates: (1) no genuine issue of material fact exists, (2) the moving party is entitled to judgment as a matter of law, and (3) reasonable minds could come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made. Civ.R. 56(C); *State ex rel. Grady v. State Emp. Relations Bd.*, 78 Ohio St.3d 181, 183 (1997). In ruling on a motion for summary judgment, the court must resolve all doubts and construe the evidence in favor of the nonmoving party. *Premiere Radio Networks, Inc. v. Sandblast, L.P.*, 10th Dist. No. 18AP-736, 2019-Ohio-4015, ¶ 6.

{¶ 8} Pursuant to Civ.R. 56(C), the party moving for summary judgment bears the initial burden of informing the trial court of the basis for the motion and of identifying those portions of the record demonstrating the absence of a genuine issue of material fact. *Dresher v. Burt*, 75 Ohio St.3d 280, 293 (1996). The moving party cannot satisfy this initial burden by simply making conclusory allegations, but instead must demonstrate, including by use of affidavit or other evidence allowed by Civ.R. 56(C), that there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. *Wiltshire Capital* at ¶ 13. If the moving party fails to satisfy this initial burden, the court must deny the motion for summary judgment; however, if the moving party satisfies the initial burden, the nonmoving party has a burden to respond, by affidavit or otherwise as provided under Civ.R. 56, with specific facts demonstrating a genuine issue exists for trial. *Dresher* at 293; *Hall v. Ohio State Univ. College of Humanities*, 10th Dist. No. 11AP-1068, 2012-Ohio-5036, ¶ 12, citing *Henkle v. Henkle*, 75 Ohio App.3d 732, 735 (12th Dist.1991).

### B. Common Law Claim for Wrongful Discharge in Violation of Public Policy

{¶ 9} "The traditional rule in Ohio is that a general or indefinite hiring is terminable at the will of either the employer or the employee, for any cause or no cause." *Miracle v. Ohio Dept. of Veterans Servs.*, 157 Ohio St.3d 413, 2019-Ohio-3308, ¶ 11, citing *Collins v. Rizkana*, 73 Ohio St.3d 65, 67 (1995). This general rule is "commonly known as the employment-at-will doctrine, which was judicially created and thus may be judicially abolished." *Sutton v. Tomco Machining, Inc.*, 129 Ohio St.3d 153, 2011-Ohio-2723, ¶ 7, citing *Kulch v. Structural Fibers, Inc.*, 78 Ohio St.3d 134, 161 (1997). In 1990, the Supreme Court of Ohio first recognized an exception to this rule for wrongful discharge in violation of public policy, holding that "[p]ublic policy warrants an exception to the employment-at-will doctrine when an employee is discharged or disciplined for a reason which is prohibited by statute." *Greeley v. Miami Valley Maintenance Contrs., Inc.*, 49 Ohio St.3d 228 (1990), paragraph one of the syllabus. *See Painter v. Graley*, 70 Ohio St.3d 377 (1994), paragraph three of the syllabus (recognizing that sources of public policy other than statutes may provide the basis for a wrongful-discharge claim). "The basis of this exception is that when the General Assembly enacts laws that are constitutional, the courts may not contravene the legislature's expression of public policy. * * * [T]he judicial doctrine of employment at will must yield when it contravenes the public policy as established by the General Assembly." *Sutton* at ¶ 8, citing *Painter* at 385.

{¶ 10} In order to prevail on a claim for wrongful discharge in violation of public policy, a plaintiff must establish four elements:

> (1) that a clear public policy existed and was manifested either in a state or federal constitution, statute or administrative regulation or in the common law ("the clarity element"), (2) that dismissing employees under circumstances like those involved in the plaintiff's dismissal would jeopardize the public policy ("the jeopardy element"), (3) the plaintiff's dismissal was motivated by conduct related to the public policy ("the causation element"), and (4) the employer lacked an overriding legitimate business justification for the dismissal ("the overriding-justification element").

*Miracle* at ¶ 12, citing *Collins* at 69-70. The clarity and jeopardy elements present questions of law, whereas the causation and overriding-justification elements present factual questions and, as such, are determined by the finder of fact.

{¶ 11} As claims for wrongful discharge in violation of public policy are made under common law, it is the responsibility of the courts to "determine when public-policy exceptions must be recognized and to set the boundaries of such exceptions." *Sutton* at ¶ 8, citing *Kulch* at 161. Since *Greeley*, the Supreme Court has examined claims for wrongful discharge in violation of public policy in a variety of contexts. *See Collins* (holding that an employee may bring a cause of action for wrongful discharge in violation of public policy based on sexual harassment and discrimination); *Kulch* (holding that an employee who is discharged or disciplined for filing a complaint with the Occupational Safety and Health Administration ("OSHA") concerning matters of health and safety in the workplace may bring a cause of action for wrongful discharge in violation of public policy); *Wiles v. Medina Auto Parts*, 96 Ohio St.3d 240, 2002-Ohio-3994 (declining to recognize wrongful discharge in violation of public policy exception where employee brought common law claim for violation of Family and Medical Leave Act ("FMLA")); *Leininger v. Pioneer Natl. Latex*, 115 Ohio St.3d 311, 2007-Ohio-4921 (declining to recognize wrongful discharge in violation of public policy exception for claim based on Ohio's public policy against age discrimination); and *Bickers v. W. & S. Life Ins. Co.*, 116 Ohio St.3d 351, 2007-Ohio-6751 (holding that employee who was terminated while receiving workers' compensation could not bring cause of action for wrongful discharge in violation of public policy).

### C. Clarity Element

{¶ 12} Because the jeopardy element requires us to examine whether a plaintiff's dismissal would jeopardize public policy, we must begin our analysis with an examination of the clarity element to identify the public policy at issue. In determining whether the clarity element was met, the Supreme Court has stated that a court must "identify whether a clear public policy exists in Ohio" that is contravened by the conduct at issue. *Collins* at 70. The Supreme Court has held that " '[c]lear public policy' sufficient to justify an exception to the employment-at-will doctrine is not limited to public policy expressed by the General Assembly in the form of statutory enactments, but may also be discerned as a matter of law based on other sources, such as the Constitutions of Ohio and the United

States, administrative rules and regulations, and the common law." *Painter* at paragraph three of the syllabus. *See Kulch* at 150.

{¶ 13} Boss, in its motion for summary judgment did not assert that appellant was unable to establish the clarity element. Rather, Boss argued appellant could not establish the jeopardy element "[b]ecause [appellant's] wrongful termination claim has nothing to do with the public policy that the Ohio prevailing wage law is designed to protect." (Mot. for Sum. Jgmt. at 2.)  Although the trial court did not expressly state that it was addressing the clarity element, implicitly it did.  In addressing the jeopardy element, it stated that "denying [appellant's] claim does not jeopardize the public policy of the statute, which is to protect the fairness of employee wages for public projects that have been contracted to private companies." (Decision at 7.)  Further, the court stated that "[t]he remedies within the statute sufficiently protect society's interest and discourage employers from disenfranchising their employees." (Decision at 7.)  The court also quoted from *Pruneau v. State*, 191 Ohio App.3d 588, 2010-Ohio-6043 (10th Dist.), *Associated Builders & Contrs. of Cent. Ohio v. Franklin Cty. Bd. of Commrs.*, 125 Ohio St.3d 112, 2010-Ohio-1199, and *Bergman v. Monarch Constr. Co.*, 124 Ohio St.3d 534, 2010-Ohio-622, to determine the general purpose of R.C. Chapter 4115.

{¶ 14} As we explain below, we find the clarity element to be met.  R.C. Chapter 4115 sets forth Ohio's prevailing wage laws.  R.C. 4115.05 provides that "[t]he prevailing rate of wages to be paid * * * to laborers, workers, or mechanics upon public works shall not be less * * * than the prevailing rate of wages then payable in the same trade or occupation in the locality where such public work is being performed," and "[e]very contract for a public work shall contain a provision that each laborer, worker, or mechanic, employed by such contractor, subcontractor, or other person about or upon such public work, *shall be paid* the prevailing rate of wages provided in this section."  (Emphasis added.)  Thus, " '[t]he prevailing wage statutes * * * require contractors and subcontractors for public improvement projects to pay laborers and mechanics the so-called prevailing wage in the locality where the project is to be performed.' " *Sheet Metal Workers' Internatl. Assn. Local Union No. 33 v. Gene's Refrig., Heating & Air Conditioning, Inc.*, 122 Ohio St.3d 248, 2009-Ohio-2747, ¶ 26, quoting *J.A. Croson Co. v. J.A. Guy, Inc.*, 81 Ohio St.3d 346, 349 (1998). Therefore, we find the clarity element met because R.C. Chapter 4115 expresses a

clear public policy requiring the payment of prevailing wage sufficient to allow for the recognition of a cause of action for wrongful discharge in violation of public policy. *Collins* at 73 (finding clarity element met by recognizing "clear public policy against workplace sexual harassment" expressed in two statutory provisions was "sufficient to justify an exception to the employment-at-will doctrine").

### D. Jeopardy Element

{¶ 15} Having found the clarity element met, we must next examine the jeopardy element. In order to establish the jeopardy element, appellant must establish that without the common law claim for wrongful discharge in violation of public policy, the clear public policy of requiring payment of prevailing wage would be compromised. *See Leininger* at ¶ 21. The Supreme Court has developed the framework for discerning whether the jeopardy element has been met. In *Wiles*, the Supreme Court stated:

> An analysis of the jeopardy element necessarily involves inquiring into the existence of any alternative means of promoting the particular public policy to be vindicated by a common-law wrongful discharge claim. Id. at 44, Section 7.17. Where, as here, the sole source of the public policy opposing the discharge is a statute that provides the substantive right and remedies for its breach, "the issue of adequacy of remedies" becomes a particularly important component of the jeopardy analysis. See *Collins*, 73 Ohio St.3d at 73, 652 N.E.2d 653. "If the statute that establishes the public policy contains its own remedies, it is less likely that tort liability is necessary to prevent dismissals from interfering with realizing the statutory policy." 2 Perritt at 71, Section 7.26. Simply put, there is no need to recognize a common-law action for wrongful discharge if there already exists a statutory remedy that adequately protects society's interests. See *Ross v. Stouffer Hotel Co. (Hawaii) Ltd., Inc.* (1994), 76 Haw. 454, 464, 879 P.2d 1037; *Erickson v. Marsh & McLennan Co., Inc.* (1990), 117 N.J. 539, 562, 569 A.2d 793; *Kofoid v. Woodard Hotels, Inc.* (1986), 78 Ore.App. 283, 286-287, 716 P.2d 771, citing *Walsh v. Consol. Freightways* (1977), 278 Ore. 347, 563 P.2d 1205. In that situation, the public policy expressed in the statute would not be jeopardized by the absence of a common-law wrongful-discharge action in tort because an aggrieved employee has an alternate means of vindicating his or her statutory rights and thereby discouraging an employer from engaging in the unlawful conduct.

*Id.* at ¶ 15.

{¶ 16} Recently, in *House v. Iacovelli,* 159 Ohio St.3d 466, 2020-Ohio-435, the Supreme Court restated the framework for analysis of the jeopardy element:

> The jeopardy-element analysis generally involves inquiring into the existence of any alternative means of promoting the *particular public policy* to be vindicated by a wrongful-termination-in-violation-of-public-policy claim. *Wiles v. Medina Auto Parts,* 96 Ohio St.3d 240, 2002-Ohio-3994, 773 N.E.2d 526, ¶ 15 (lead opinion). When the sole source of the public policy is a statutory scheme that provides rights and remedies for its breach, [as the court determined in *Iacovelli*], we must consider whether those remedies are adequate to protect society's interest as to the public policy. *Wiles* at ¶ 15; *see Collins* at 73. It is less likely that a wrongful-termination-in-violation-of-public-policy claim is necessary when remedies for statutory violations are included in the statutory scheme. *Wiles* at ¶ 15 ("there is no need to recognize a common-law-action for wrongful discharge if there already exists a statutory remedy that adequately protects society's interests"). This is especially true "when remedy provisions are an essential part of the statutes upon which the plaintiff depends for the public policy claim and when those remedies adequately protect society's interest by discouraging the wrongful conduct." *Leininger v. Pioneer Natl. Latex,* 115 Ohio St.3d 311, 2007-Ohio-4921, 875 N.E.2d 36, ¶ 27.

(Emphasis added.)  *Id.* at ¶ 16.

{¶ 17} In discussing the particular public policy at issue in *Iacovelli*, the Supreme Court was careful to distinguish between public policies that promote only a government

or society's[1] interest and "public policies that protect substantial[2] rights of the employee." *Id.* at ¶ 19.[3]

{¶ 18} Therefore, pursuant to the framework outlined in *Wiles* and *Iacovelli*, in examining the jeopardy element of the wrongful termination claim, we must determine: (1) whether the public policy underlying Ohio's prevailing wage law promotes society's interests, protects substantive rights of employees or both, and (2) whether the remedies outlined in R.C. Chapter 4115 adequately protect such interests and/or rights.[4]

   1. **Whether Public Policy of Prevailing Wage Promotes Society's Interests, Protects Substantive Rights of Employees or Both**

{¶ 19} We first consider whether the public policy of prevailing wage promotes society's interests, protects substantive rights of employees, or both. The Supreme Court has recognized Ohio's prevailing wage public policy both: (1) protects the substantive rights of employees, and (2) promotes society's interests.

---

[1] We have observed that wrongful discharge case law has used the phrases "government interest," "state's interest" and "society's interest" interchangeably. For consistency, we will use the phrase "society's interest" to refer to all three phrases.

[2] We have observed that wrongful discharge case law has used the terms "substantial" rights and "substantive" rights interchangeably. *See Iacovelli* at ¶ 19, 22. For consistency, we will use the term "substantive" rights to refer to both terms.

[3] In *Iacovelli*, the Supreme Court determined that the public policy announced in the case protects a particular society's interest: the accurate reporting of employee's wages to the Bureau of Unemployment Compensation, and further that such public policy was "not like the public policies that [it] recognized in *Kulch*, *Collins*, *Wiles*, *Leininger*, and *Bickers*, which specifically protect employees." *Id.* at ¶ 20. The court then determined "looking *only* at the public policy [in *Iacovelli*] and R.C. Chapter 4141" that a personal remedy was not necessary to discourage wrongful conduct by employers and the remedies in the statute are sufficient to protect society's interest in the public policy that employers should accurately report employee's pay and tips to the Bureau of Unemployment Compensation. (Emphasis added.) *Id.* at ¶ 18.

[4] We reject the trial court's analysis framework that "the Court finds that the distinction between whether a public policy protects a substantive right or a particular government interest turns on whether the remedies available under the applicable statute adequately protect the public policy it creates and effectively deter acts that contravene that policy." (Decision at 6.) The trial court did not cite to any authority to support the blurring of the two questions. Nor do we find any such authority. Instead, we follow the analysis framework set forth in *Wiles* and *Iacovelli*.

### a. *Public Policy of Prevailing Wage Protects Substantive Right of Employees*

{¶ 20} The public policy of protecting the substantive right of employees was addressed in *Sheet Metal Workers'.* In that case, the court looked to the actual preamble language of legislation enacting Ohio's prevailing wage law in 1931, and recognized that the General Assembly[5] provided the law's purpose was " '[t]o establish a *fair rate of wages to be paid to workmen and mechanics* employed in construction of public improvements.' " (Emphasis added.) *Id.* at ¶ 30, quoting H.B. No. 3, 114 Ohio Laws, 116. Subsequently, the Supreme Court stated that "the legislative intent of the prevailing-wage law in R.C. Chapter 4115 is to 'provide a comprehensive, uniform framework for, inter alia, *worker rights* and remedies vis-a-vis private contractors, sub-contractors and materialmen engaged in the construction of public improvements in this state.' " (Emphasis added.) *Bergman* at ¶ 10, quoting *State ex rel. Evans v. Moore*, 69 Ohio St.2d 88, 91 (1982) (plurality opinion). This

---

[5] In 2005, the Legislative Service Commission ("LSC") also recognized that among the several purposes behind the prevailing wage statute is to "guarantee" that employees be paid a prevailing wage. During the 126th General Assembly, H.B. No. 222 was introduced to repeal Ohio's prevailing wage law. The bill was assigned to the House Commerce & Labor Committee, yet according to LSC's Status Report of Legislation, it appears the bill was never considered by the full House of Representatives. Nevertheless, in its Fiscal Note & Local Impact Statement regarding H.B. No. 222, LSC answered the question "Why Were Prevailing Wage Laws Established?" as follows:

When the federal and Ohio's prevailing wage law was passed in 1931, the country was in the Great Depression. Unemployment was high and the government was concerned that employers might cut wages in order to win contracts. Therefore, part of the prevailing wage's intent was to prevent lower wage labor from outside an area where public construction occurred from entering a local market. *Through this legislation, workers in the specified locality would be guaranteed to be paid the 'prevailing' wage rate for public construction projects.* This protected the locality from cheaper outside labor. The purpose appears to have been to promote the stability of local economies.

Another purpose of the prevailing wage law was to ensure that a firm was not able to set local wage rates. Because public projects can dominate economic activity in a locality, one or several firms may be able to garner significant market share. The argument proceeds by indicating that firms with a large market share could determine local wage rates. To maintain their dominance, the firm could demand low wage rates.

Still another case for the establishment of prevailing wage laws was the need to protect a highly cyclical construction industry. Demand for construction labor fluctuates with the business cycle. Upward swings in the economy generally lead to greater construction labor demands. Downward swings have the opposite effect. Although prevailing wage laws do not protect the construction industry from cyclical swings, *it does afford construction workers a determined wage rate* during the times they complete work on public projects." (Emphasis added.) LSC, *Fiscal Note & Local Impact Statement*, https://www.lsc.ohio.gov/documents/gaDocuments/126ga/hb0222in.htm (accessed Oct. 21, 2021).

court has also recognized the public policy of protecting the substantive right of workers. In *Robbins Sound, Inc. v. Ohio Univ.*, 70 Ohio App.3d 212, 220 (10th Dist.1990), we stated that "R.C. Chapter 4115 imposes certain duties and creates specific remedies to achieve the *underlying purpose of ensuring that employees who perform labor on a public improvement are paid the prevailing wage rate* enjoyed by similar employees working on private projects in a given locality."  (Emphasis added.)  *See also Tri-M Group, L.L.C. v. Univ. of Cincinnati*, 10th Dist. No. 10AP-486, 2010-Ohio-6398, ¶ 7, quoting *Robbins Sound* at 220.  The Supreme Court's and our recognition of Ohio's prevailing wage public policy of protecting the substantive right of employees is consistent with the General Assembly's use of mandatory language in R.C. 4115.05 that laborers, workers and mechanics "*shall be paid* the prevailing rate of wages." (Emphasis added.)[6]  Thus, the Supreme Court and our court have recognized that Ohio's prevailing wage is a public policy that protects the substantive right of employees to be paid the prevailing wage.

## b. *Public Policy of Prevailing Wage Promotes Society's Interest*

{¶ 21}  The Supreme Court has also stated that Ohio's prevailing wage public policy promotes society's interest.  In *Evans*, the Supreme Court stated that "[t]he primary purpose[7] of the prevailing wage law is to support the integrity of the collective bargaining process by preventing the undercutting of employee wages in the private construction sector."  *Id.* at 91.  Thus, the Supreme Court has recognized Ohio's prevailing wage public

---

[6] In addition, R.C. 4115.10(D) states: "Where persons are employed and their rate of wages has been determined as provided in section 4115.04 of the Revised Code, no person, either for self or any other person, shall request, demand, or receive, either before or after the person is engaged, that the person so engaged pay back, return, donate, contribute, or give any part or all of the person's wages, salary, or thing of value, to any person, upon the statement, representation, or understanding that failure to comply with such request or demand will prevent the procuring or retaining of employment, and no person shall, directly or indirectly, aid, request, or authorize any other person to violate this section. This division does not apply to any agent or representative of a duly constituted labor organization acting in the collection of dues or assessments of such organization." *See also* Ohio Adm.Code 4101:9-4-20(E). Ohio Adm.Code 4101:9-4-20(D) states: "An employer shall not pay less than the prevailing rate of wages by docking pay, docking time, or deducting pay for any purpose unless provided for in sections 4115.03 to 4115.16 of the Revised Code or division-level 4101:9 rules of the Administrative Code."

[7] We recognize that in *Evans* the court stated that "[a]bove all else" the primary purpose of the prevailing wage law is to support the integrity of the collective bargaining process. However, *Evans* was decided in 1982, and subsequently, in 2009, as noted above, in *Sheet Metal Workers*, the court looked specifically to the preamble of the Act enacting Ohio's prevailing wage law to reiterate the General Assembly's concurrent purpose of establishing a fair rate of wages to be paid to workers.

policy of promoting society's interest in supporting the integrity of the collective bargaining process.

**2.** **Whether the R.C. 4115 Remedies Adequately Protect the Employee's Substantive Right and Society's Interest**

{¶ 22} To answer the second question, we must address whether the remedies outlined in R.C. Chapter 4115 adequately protect: (1) the substantive right of employees to receive the prevailing wage, and (2) society's interest in supporting the collective bargaining process.

{¶ 23} Here, in granting summary judgment in favor of Boss, the trial court found as a matter of law that appellant was unable to satisfy the jeopardy element of his wrongful discharge claim. The trial court found that appellant's claim for damages was capable of being addressed within the framework of the prevailing wage statute. Furthermore, the court found the remedies within the prevailing wage statute sufficiently protect society's interest and discourage employers from violating its provisions. The trial court noted that the prevailing wage statute did not contain a whistleblower provision that provided an employee with a personal cause of action when the employee suffered retaliation for reporting of a prevailing wage violation.[8] The court concluded that if the General Assembly "wished to create substantive rights for employees under R.C. Chapter 4115, it could have done so." (Decision at 7.) Thus, the trial court found appellant could not maintain a claim for wrongful discharge in violation of public policy as he failed to establish the jeopardy element as a matter of law.

---

[8] The trial court also stated that "R.C. Chapter 4115 does not have a whistleblower section that protects the employee or bestows a personal cause of action for retaliating against the reporting of a prevailing wage violation. Had the legislature wished to create substantive rights for employees under R.C. Chapter 4115, it could have done so." (Decision at 7.) Boss also asserts the lack of whistleblower provisions in support of its argument that the General Assembly did not enact the prevailing wage law to provide employees with a substantive right. Boss points to the Supreme Court's observation in *Iacovelli* that the statute at issue in that case, R.C. Chapter 4141, did not contain a whistleblower provision, "does not serve to protect the employee" and "[h]ad the General Assembly wished to create substantive rights for the employee in this case, it could have done so." *Iacovelli* at ¶ 22. As we explain above, the case before us is distinguished from *Iacovelli* in that the language of R.C. Chapter 4115, its preamble, the Supreme Court and our court have recognized in R.C. Chapter 4115 an underlying public policy of protecting substantive rights of employees to receive a prevailing wage. Therefore, it is not necessary for us to consider the significance of lack of whistleblower protections in R.C. Chapter 4115.

{¶ 24} In the context of determining whether the jeopardy element of a wrongful discharge in violation of public policy claim, the Supreme Court has not addressed whether the remedies set forth in R.C. Chapter 4115 adequately protect: (1) the substantive right of an employee to be paid a prevailing wage, or (2) the society's interest in supporting the integrity of the collective bargaining process. However, in different contexts, the court has characterized the statutory remedies in R.C. Chapter 4115 are "comprehensive" and "uniform."[9] Notwithstanding this characterization in different contexts, it is still necessary to determine whether the remedies set forth in R.C. Chapter 4115 adequately protect the

---

[9] In the context of deciding whether a common pleas court had jurisdiction to preside over the relator's "appeal" was consistent with the procedural remedies for violations of prevailing wage law set forth in R.C. Chapter 4115, the Supreme Court stated "R.C. Chapter 4115 provides a comprehensive statutory procedure for effecting compliance with the prevailing wage law through administrative and civil proceedings." *State ex rel. Harris v. Williams*, 18 Ohio St.3d 198, 200 (1985).

In the context of holding that the prosecuting attorney has authority to prosecute criminal violations of prevailing wage laws, the Supreme Court stated:

> R.C. 4115.03 to 4115.16 set forth requirements relating to the payment of the prevailing wage on public works projects, and also provide a comprehensive framework for securing compliance with such provisions.* * * The foregoing sections provide a comprehensive and uniform system under which the department is initially responsible for securing compliance and compensation through administrative and civil proceedings.

*State v. Buckeye Elec. Co.*, 12 Ohio St.3d 252, 253 (1984).

In the context of deciding whether a city may unilaterally exempt itself from the prevailing wage law, the Supreme Court in *Evans* stated "[t]he state's interest in supporting the collective bargaining process provides an additional justification for the conclusion that the challenged ordinance is beyond the scope of municipal power. The prevailing wage law evidences a legislative intent to provide a comprehensive, uniform framework for, *inter alia*, worker rights and remedies vis-a-vis private contractors, sub-contractors and materialmen engaged in the construction of public improvements in this state. The prevailing wage law delineates civil and criminal sanctions for its violation." *Evans* at 91.

In the context of deciding whether the penalties set forth in R.C. 4115.10(A) are mandatory or discretionary, the Supreme Court in *Bergman* stated:

> We have previously stated that the legislative intent of the prevailing-wage law in R.C. Chapter 4115 is to "provide a comprehensive, uniform framework for, *inter alia*, worker rights and remedies vis-a-vis private contractors, sub-contractors and materialmen engaged in the construction of public improvements in this state." *State ex rel. Evans v. Moore* (1982), 69 Ohio St.2d 88, 91, 23 O.O.3d 145, 431 N.E.2d 311 (plurality opinion). * * * To achieve this end, R.C. Chapter 4115 provides to employees who have been denied the prevailing wage a comprehensive statutory procedure of administrative and civil proceedings to ensure an employer's compliance with the prevailing-wage laws. *State ex rel. Harris v. Williams* (1985), 18 Ohio St.3d 198, 200, 18 OBR 263, 480 N.E.2d 471.

*Id.* at ¶ 10.

right and interest in the context before us. In so doing, we look to *Iacovelli* and *Wiles* for the framework of analysis. We begin by summarizing the statutory remedies available for violations of prevailing wage requirements under R.C. Chapter 4115.

**a. *Summary of Statutory Remedies for Violations of Prevailing Wage Requirements***

{¶ 25} The prevailing rate of wages for a particular class of work is determined by the director of the Ohio Department of Commerce ("the director"). R.C. 4115.04(A)(1). *See Associated Builders* at ¶ 11. The director is also charged with enforcing compliance with the prevailing wage laws. R.C. 4115.10(E). Under the prevailing wage statute, no employer shall violate the provisions of R.C. 4115.03 to 4115.16 or permit an employee to work for less than the fixed rate of wages as determined by the director. R.C. 4115.10(A). If an employer violates such statutory provisions by paying an employee less than the prevailing wage, "the employee has several options to recoup [the] underpayment." *Bergman* at ¶ 11.

{¶ 26} Under the first option, an affected employee may institute an enforcement action pursuant to R.C. 4115.10(A) to recoup the underpayment. Alternatively, pursuant to R.C. 4115.10(B), the employee may assign the right to institute an enforcement action by filing a written complaint with the director. *See* Ohio Adm.Code 4101:9-4-23. Finally, in the event the employee does not institute an enforcement action or assign the right to pursue an action to the director within the statutorily specified time, the director, upon a determination that there was a violation of the prevailing wage provisions, is obligated to "bring any legal action necessary to collect any amounts owed to employees and the director." R.C. 4115.10(C). *See Harris v. Van Hoose*, 49 Ohio St.3d 24, 26 (1990) (stating that "the director is required to bring the action *sua sponte*" pursuant to R.C. 4115.10(C) where the prerequisite statutory conditions have been met).

{¶ 27} Under the employee-initiated action pursuant to R.C. 4115.10(A), the employee is entitled to the following remedy for underpayment of wages: "the difference between the fixed rate of wages and the amount paid to the employee and in addition thereto a sum equal to twenty-five per cent of that difference." Additionally, the statute requires that an employer found to have paid less than the prevailing wage "shall pay a penalty to the director of seventy-five per cent of the difference between the fixed rate of wages and the amount paid to the employees on the public improvement." R.C. 4115.10(A).

{¶ **28**}  In addition to the restitution and penalty provisions under R.C. 4115.10, the director must file "with the secretary of state a list of contractors, subcontractors, and officers of contractors and subcontractors who have been prosecuted and convicted for violations of or have been found to have intentionally violated [R.C.] 4115.03 to 4115.16." R.C. 4115.133(A). Those subject to the reporting provision in R.C. 4115.133(A) are barred from "contracting directly or indirectly with any public authority for the construction of a public improvement or from performing any work on the same * * * for a period of one year."  R.C. 4115.133(B).  *See Associated Builders* at ¶ 15.  If those subject to the reporting provision in R.C. 4115.133(A) are found to have intentionally violated the prevailing wage statute another time within five years, they are barred from contracting or performing work for a period of three years.  R.C. 4115.133(B).

{¶ **29**}  Furthermore, criminal penalties apply to those found to have violated certain provisions of the prevailing wage statutes. R.C. 4115.99.  *See Associated Builders* at ¶ 15. Violations of R.C. 4115.08 and 4115.09 are subject to a fine of $25 to $500.  R.C. 4115.99(A). Those found to have violated certain other sections, including R.C. 4115.10, are subject to being found guilty of a misdemeanor of the second degree for a first offense and a misdemeanor of the first degree for each subsequent offense. R.C. 4115.99(B).

**b.** ***General Assembly's Intent to Afford Remedies Beyond Restitution Only When Prevailing Wage Violation is Intentional***

{¶ **30**}  Before proceeding with our analysis of whether the remedies set forth in R.C. Chapter 4115 are adequate to promote society's interest in collective bargaining and protect the substantive right of an employee to receive the prevailing wage, we must recognize the General Assembly's clear intent to afford remedies beyond restitution only when a violation of prevailing wage has determined to be intentional.  This intent is plainly evident in R.C. 4115.13.  Pursuant to R.C. 4115.13, upon the director's own motion or within five days of the filing of a properly filed complaint under R.C. 4115.10 or 4115.16, the director must investigate any alleged violation of prevailing wage law and make a determination as to whether the alleged violation was committed.  Upon determining that a violation was committed, the director must determine whether such violation was "intentional" or "the result of a misinterpretation of the statute, or an erroneous preparation of the payroll documents." R.C. 4115.13(B) and (C).  If the director finds that "any underpayment was the

result of a misinterpretation of the statute, or an erroneous preparation of the payroll documents, employers who make restitution are not subject to any further proceedings pursuant to [R.C.] 4115.03 to 4115.16." R.C. 4115.13(C). As used in this context, "intentional violation" is defined as a "willful, knowing, or deliberate failure to comply" with the prevailing wage statute. R.C. 4115.13(H). Further, in determining whether a violation was intentional, the director may consider evidence outlined at R.C. 4115.13(G).

{¶ 31} In his complaint, appellant alleged that Boss's conduct was "willful, wanton, and [in] reckless[] disregard[] [of] the rights of Plaintiff." (Am. Compl. at 3-4.) Thus, appellant alleged an intentional violation of the prevailing wage law.

{¶ 32} With this in mind, our analysis and holding in this case regarding whether the remedies set forth in R.C. Chapter 4115 are adequate to promote society's interest in prevailing wage and protect an employee's substantive right to receive the prevailing wage is limited to circumstances where an employer committed intentional violations of prevailing wage law.

### c. *Analysis of Adequacy of Remedies to Promote Society's Interest in Supporting Collective Bargaining*

{¶ 33} In examining the adequacy of remedies to promote society's interest in supporting collective bargaining, we find *Iacovelli* to be instructive because the analysis therein pertained to a public policy which protected a society's interest and emanated from a sole source which provided rights and remedies for its breach—as is the circumstance here.

{¶ 34} In *Iacovelli*, the Supreme Court analyzed whether statutory remedies in R.C. Chapter 4141 are sufficient to protect "society's interest in ensuring that employers accurately report employees' pay and tips to the Bureau of Unemployment Compensation." *Id.* at ¶ 17. The plaintiff was an employee who worked at a restaurant, whose owner allegedly underreported the employee's income to the state. As a result of this underreporting of income, the employee would receive less unemployment compensation than what she would have otherwise been entitled to receive. After the employee complained to the restaurant owner, the restaurant terminated her employment. The employee then brought a wrongful termination claim, arguing that her termination was in violation of public policy as expressed in R.C. Chapter 4141, which requires employers to

accurately report employees' pay and tips to the Bureau of Unemployment Compensation. The employee argued the jeopardy element of her wrongful termination claim was met because the remedies in R.C. Chapter 4141 were "insufficient to protect her or society's interests and to discourage wrongful conduct" because there was "no personal remedy to protect employees who were dismissed after informing their employers of R.C. Chapter 4141 violations." *Id.* at ¶ 18.

{¶ 35} The Supreme Court disagreed. It found the public policy underlying R.C. Chapter 4141 protected only society's interest. The court noted that the General Assembly provided multiple remedies, including forfeiture, civil action, fines, or criminal penalties, in R.C. Chapter 4141 to discourage employers from inaccurately reporting employees' pay and punish those who violate its provisions.[10] In this context, the court found the employee failed to establish the jeopardy element.

{¶ 36} Here, similar remedies exist in R.C. Chapter 4115. An employee, or an interested party[11] may file a complaint alleging a violation to the director and the director shall investigate. The director may investigate on his or her own motion as well. R.C. 4115.10(A), 4115.16 and 4115.13. If the director finds a violation, a penalty of 75 percent of the difference between the prevailing wage rate and the actual rate paid shall be assessed and paid to the director. R.C. 4115.10(A). The employee may recover the full amount of the difference plus 25 percent of the difference to the employee. R.C. 4115.10(A). If the director finds intentional violations, the contractors, subcontractors and officers involved will be

---

[10] As noted previously, the Supreme Court further stated in *Iacovelli* that in finding "a personal remedy is not necessary to discourage wrongful conduct by employers and the remedies in the statute are sufficient to protect society's interest in the public policy that employers should accurately report employees' pay and tips" it was "looking only at the public policy and R.C. Chapter 4141." *Id.* at ¶ 18. In reaching this conclusion, the court noted the public policy at issue was unlike the public policies in cases in which the court previously recognized the jeopardy element was met because those cases involved provisions "which specifically protect employees." *Id.* at ¶ 20. The public policy at issue in *Iacovelli*, however, did not specifically protect an employee interest, but rather protected "a particular government interest," namely the accurate reporting of wages to the Bureau of Unemployment Compensation. *Id.*

[11] " 'Interested Party,' with respect to a particular contract for construction of a public improvement, means: (1) Any person who submits a bid for the purpose of securing the award of the contract; (2) Any person acting as a subcontractor of a person described in division (F)(1) of this section; (3) Any bona fide organization of labor which has as members or is authorized to represent employees of a person described in division (F)(1) or (2) of this section and which exists, in whole or in part, for the purpose of negotiating with employers concerning the wages, hours, or terms and conditions of employment of employees; (4) Any association having as members any of the persons described in division (F)(1) or (2) of this section." R.C. 4115.03(F).

included on a list and prohibited from contracting with any public authority for a defined period of time. R.C. 4115.133. If, after being notified by the director of a violation, a contractor, subcontractor or officer does not timely come into compliance, the director must notify the attorney general who must bring suit in the name of the state to enjoin awarding of a contract, or, if a contract is already awarded, to enjoin further work. R.C. 4115.14. Finally, criminal penalties may be pursued by the prosecuting attorney for certain violations. R.C. 4115.99.

{¶ 37} We find the remedies set forth in R.C. Chapter 4115 adequately protect society's interest in supporting collective bargaining by discouraging the wrongful conduct.

### d. *Analysis of Adequacy of Remedies to Protect Substantive Right of Employees to Receive Prevailing Wage*

{¶ 38} In examining the adequacy of remedies to protect the substantive right of employees to receive prevailing wage, we begin by noting that *Iacovelli* recognized that in circumstances that involved public policies that protect substantive rights of the employee, the Supreme Court has looked to see whether "the statutory scheme contains a sufficient personal remedy for the aggrieved employee." *Iacovelli* at ¶ 19. Accordingly, we must do the same here. We find *Wiles* to be instructive because the analysis therein pertained to a public policy which protected a substantive right of an employee and emanated from a sole source which provided rights and remedies for its breach—as is the circumstance here. Therefore, we compare the remedies in *Wiles* to the remedies set forth in R.C. Chapter 4115. We also compare the remedies in *Leininger* and *Greeley* to the remedies set forth in R.C. Chapter 4115.

### i. Comparison to remedies considered in *Wiles*, *Leininger*, and *Greeley*

{¶ 39} In *Wiles*, the employee alleged his employer wrongfully discharged him in retaliation for exercising his rights under FMLA. Although the employee cited FMLA in his complaint, he did not seek recovery under that statute's remedial provisions, but rather brought only a claim for wrongful discharge in violation of public policy. Finding the clarity element of the wrongful discharge claim was met, the Supreme Court focused on the jeopardy element.

{¶ 40} As noted above, the court in *Wiles* stated that where "the sole source of the public policy opposing the discharge is a statute that provides the substantive right *and* remedies for its breach, 'the issue of adequacy of remedies' becomes a particularly important component of the jeopardy analysis." (Emphasis sic.) *Wiles* at ¶ 15, quoting *Collins* at 73. Focusing on the adequacy of remedies under the FMLA statute, the court found that where "an aggrieved employee has an alternate means of vindicating his or her statutory rights and thereby discouraging an employer from engaging in the unlawful conduct," the public policy provided under the statute would not be jeopardized, and, as a result, it was unnecessary to recognize a common law wrongful discharge claim. *Id.* at ¶ 15.

{¶ 41} In *Wiles*, the Supreme Court noted the FMLA's remedial scheme provided for: (1) compensatory damages equal to the lost amount of wages, salary benefits or other compensation, plus interest, or, if no wages were lost due to the violation, any actual monetary losses sustained as a direct result of the violation, (2) liquidated damages in like amount of the compensatory damages, (3) prejudgment interest, (4) reasonable attorney fees, and (5) equitable relief as appropriate, including reinstatement and promotion or an award of front pay either in lieu of reinstatement, or in some cases, in conjunction with it (i.e., for the period between judgment and reinstatement). *Wiles* at ¶ 16-17. As a result, the court concluded the FMLA's remedies "provide[d] an employee with a meaningful opportunity to place himself or herself in the same position the employee would have been absent the employer's violation of the FMLA." *Id.* at ¶ 17. Furthermore, the court clarified its analysis in *Kulch*, stating that "*Kulch* does not * * * stand for the proposition that statutory remedies are inadequate—therefore warranting a *Greeley* claim—when those remedies provide something less than the full panoply of relief that would be available in a tort cause of action for wrongful discharge." *Id.* at ¶ 20. Consistent with this, the court noted that although the FMLA did not allow for punitive damages or damages for emotional distress, the absence of such remedies did not render the statutory remedies inadequate. Therefore, the court concluded that a common law claim for wrongful discharge in violation of public policy was "unnecessary to vindicate the policy goals of the FMLA" and declined to recognize such a claim. *Id.* at ¶ 1.

{¶ 42} In *Leininger*, the employee alleged his employer wrongfully discharged him in violation of Ohio's public policy against age discrimination. The court found the clarity

element was satisfied and focused on the jeopardy element, examining the remedies for age discrimination outlined in four separate statutes. *Leininger* at ¶ 29. The court noted the statutes provided for a claimant to elect between remedies providing for: (1) any legal or equitable relief that would effectuate an individual's rights, (2) the Ohio Civil Rights Commission to issue a cease and desist order and an order to take any further action including, but not limited to, hiring, reinstatement or upgrading of employees with or without pay, (3) a court to order an appropriate remedy which shall include reimbursement for the costs and attorney fees or to reinstate the employee in his or her former position with compensation for lost wages and fringe benefits from the date of illegal discharge, and (4) civil action for damages, injunctive relief, or any other appropriate relief. The court further noted that "[the statutes] have broad language regarding the relief available. Damages, absent a restrictive modifier like compensator, actual, consequential or punitive, is an inclusive term embracing the panoply of legally recognized pecuniary relief. Similarly, legal relief means a remedy available in a court of law, i.e., damages." (Quotations and citations omitted.) *Id.* at ¶ 30.

{¶ 43} The *Leininger* court noted that even though the plaintiff was required to elect which statutory remedy to pursue, he could choose from the full spectrum of remedies available. Therefore, the court found the jeopardy element necessary to support a common law claim was not satisfied.

{¶ 44} The remedies in *Wiles* and *Leininger* are more comprehensive than the statutory remedies in the case before us. Pursuant to R.C. Chapter 4115, an employee may recover damages equal to the difference between the amount paid and the prevailing wage, reasonable attorney fees, and an amount equal to 25 percent of the difference between the amount paid and the prevailing wage. However, liquidated damages in the full amount of wages lost, as were available in *Wiles*, are not available to an employee. Furthermore, a broad scope of damages, as were available in *Leininger*, are not available to an employee. Finally, equitable relief in the form of reinstatement, as were available in *Wiles* and *Leininger*, are not available to an employee here. Thus, the statutory remedies set forth in R.C. Chapter 4115 do not provide employees "with a meaningful opportunity to place himself or herself in the same position the employee would have been absent the employer's violation of [Ohio's prevailing wage law]." *Compare Wiles* at ¶ 17.

{¶ 45} In *Wiles* and *Leininger*, the Supreme Court found that the jeopardy element had not been met because the statutory remedies were adequate to protect the employees' substantive rights. In *Greeley*, however, the court found the employee could pursue a common law cause of action in wrongful discharge to redress a violation. The court held that the plaintiff had stated a cause of action for wrongful termination in violation of R.C. 3113.213 (the statute prohibiting the use of a child support withholding order as a basis for discharging an employee). In so doing, the *Greeley* court, highlighted that an amendment to the statute did not include "reinstatement and back pay remedies." *Id.* at 231. The court further noted that "[i]mposing a fine against an employer who violates R.C. 3113.213(D) is a matter between the employer and the government. Whether a remedy is available to an aggrieved employee is a wholly separate matter." *Id.* Finally, the court noted that "[h]ad the General Assembly intended to bar a civil remedy to workpersons situated similarly to [Greeley], it certainly knew how to do so." *Id.; see, e.g.,* R.C. 4112.02(N).

{¶ 46} Similar to the statutory remedies considered in *Greeley*, as noted above, the statutory remedies set forth in R.C. Chapter 4115 do not include reinstatement or backpay. Furthermore, the 75 percent penalty assessed and paid to the director, suspension of being awarded public contracts, injunctions to stop work, and criminal penalties "[are] a matter between the employer and the government." *Greeley* at 231. Finally, there is no indication in the text of R.C. Chapter 4115 that the General Assembly intended to bar civil remedies or to limit relief exclusively to statutory remedies.[12]

{¶ 47} Although we hold above that society's interest in supporting the collective bargaining process is adequately protected by the remedies set forth in R.C. Chapter 4115, we cannot say the substantive right of employees to receive a prevailing wage are adequately protected by the remedies set forth in R.C. Chapter 4115. Consistent with *Greeley*, we hold that the substantive right of an employee to receive the prevailing wage is not adequately protected by the remedies set forth in R.C. Chapter 4115—which do not include broad

---

[12] R.C. 4115.10(A) provides an "employee may file suit for recovery [difference between prevailing wage and the amount paid to the employee plus a sum equal to 25 percent of that difference] within ninety days of the director's determination of a violation of sections 4115.03 to 4115.16 of the Revised Code or is barred from further action *under this division*." (Emphasis added.) There is no indication in R.C. Chapter 4115 that an employee's suit pursuant to R.C. 4115.10(A) is the exclusive remedy available to the employee.

damages, including full liquidated damages and back pay, and do not include equitable relief such as reinstatement.

### ii. Remedies unavailable to appellant as a discharged employee

{¶ 48} Finally, appellant argues the provisions of R.C. 4115.10 limit remedies to only current employees and would not be available to appellant, a discharged employee.[13] In support of this contention, appellant points to *Sutton*.

{¶ 49} In *Sutton*, the Supreme Court considered whether there should exist a cause of action for wrongful discharge in violation of public policy where an injured employee suffers a retaliatory employment action after injury on the job but before the employee files a workers' compensation claim or institutes, pursues, or testifies in a workers' compensation proceeding. The relevant statutory provision in that case provided that " '[n]o employer shall discharge, demote, reassign, or take any punitive action against any employee because the employee filed a claim or instituted, pursued or testified in any proceedings under the workers' compensation act for an injury or occupational disease which occurred in the course of and arising out of his employment with that employer.' " *Sutton* at ¶ 13, quoting R.C. 4123.90. The remedial provisions of that statute provided: " '*Any such employee* may file an action in the common pleas court of the county of such employment.' " (Emphasis sic.) *Id.* at ¶ 26, quoting R.C. 4123.90. Thus, the court found "[e]ssentially, a gap exists in the language of the statute for conduct that occurs between the time immediately following injury and the time in which a claim is filed, instituted, or pursued." *Id.* at ¶ 14. As a result, the court found that the workers' compensation statute did not provide adequate remedies, and, as a result, the jeopardy element was satisfied. The court held that the term "[a]ny such employee" is a "limitation on the class of people that can avail itself of the remedies set out in R.C. 4123.90 [and] [b]y its express terms, R.C.

---

[13] Appellant also asserts the remedies under the prevailing wage statute are inadequate because "he was seeking the prevailing wage for his fellow, subordinate employees, not for himself personally." (Appellant's Brief at 16.) Appellant argues that "[a]ssuming that [he] *himself* did not have a claim for unpaid prevailing wages but merely asserted it on behalf of others, [R.C.] Chapter 4115 avails no remedy to him whatsoever." (Emphasis sic.) (Appellant's Brief at 16.) However, contrary to the assumption in his argument, appellant alleged in his amended complaint that his "employment was terminated as a direct result of him asserting *his* and his fellow employees' right to be paid a prevailing wage." (Emphasis added.) (Appellant's Compl. at 2.) Thus, appellant alleged that he himself was subject to a prevailing wage violation. As such, we need not determine the same. Instead, we limit our discussion to whether the remedies available to appellant under the prevailing wage statute were sufficient to protect appellant's substantive right as an employee.

4123.90 [did] not apply to Sutton or others who experience retaliatory employment action after being injured but before they file, institute or pursue a workers' compensation claim." *Id.* at ¶ 27. The court held that in such circumstance, R.C. 4123.90 does not provide adequate remedies, and thus the jeopardy element is satisfied.

{¶ 50} Here, the remedies set forth in R.C. 4115.10(A) are available to "[a]ny employee upon any public improvement * * * who is paid less than the fixed rate of wages applicable thereto." No mention is made of discharged employees or former employees. Furthermore, the remedies set forth in R.C. 4115.16 are available to "interested part[ies]," however, "interested part[ies]," as defined in R.C. 4115.03(F), does not include discharged or former employees.

{¶ 51} Boss argues that nothing in the statute requires such a narrow interpretation of the term "employee" to exclude discharged or former employees. However, Boss points to no authority that requires an interpretation that includes discharged or former employees. Further, Boss's argument that the department of commerce form provided for filing a prevailing wage complaint includes a box for a "former employee" is unavailing. Boss points to no statute, rule or case law which requires the department to include such a box. *See State ex rel. Aaron's, Inc. v. Ohio Bur. of Workers' Comp.*, 10th Dist. No. 13AP-170, 2014-Ohio-3425, ¶ 9 (finding Bureau of Workers' Compensation's "internal policy" did not "establish[] a clear legal duty on the part of the bureau, or a clear legal right on the part of the relator"); *State ex rel. Medcorp, Inc. v. Ryan*, 10th Dist. No. 06AP-1223, 2008-Ohio-2835, ¶ 18; *State ex rel. Bledsoe v. Marion Steel Co.*, 10th Dist. No. 02AP-193, 2002-Ohio-6835, ¶ 9 (finding internal memorandum did not give clear legal right to relief requested nor impose any clear legal duty).

{¶ 52} To the contrary, Ohio Adm.Code 4101:9-4-02(K)[14] defines an "[e]mployee," in relevant part, as "any person *in the employment of an employer* [any public authority, contractor or subcontractor] who performs labor or work of the type performed by a laborer, workman, or mechanic in the construction, prosecution, completion or repair of a public improvement and includes owners, partners, supervisors, and working foremen who devote more than twenty per cent of their time during a work week to such labor or work for the time so spent." (Emphasis added.)

{¶ 53} In *Collins*, the court held that the availability of remedies in R.C. Chapter 4112 (prohibiting sexual harassment/discrimination) could not serve to defeat Collins' wrongful discharge claim because those remedies were "simply not available" to Collins as her employer was not included in the statutory definition of employer. *Id.* at 74.

{¶ 54} Likewise here, the remedies set forth in R.C. Chapter 4115 are simply not available to appellant as he is no longer an employee as that term is defined in Ohio Adm.Code 4101:9-4-02(K) and in this specific context of prevailing wage law.[15] Therefore, said remedies do not serve to defeat appellant's wrongful discharge claim. For the reasons

---

[14] Ohio Adm.Code 4101:9-4-02(K) in its entirety reads: " 'Employee' means any person in the employment of an employer [any public authority, contractor or subcontractor] who performs labor or work of the type performed by a laborer, workman, or mechanic in the construction, prosecution, completion or repair of a public improvement and includes owners, partners, supervisors, and working foremen who devote more than twenty per cent of their time during a work week to such labor or work for the time so spent. Employee does not include an individual who is a sole proprietor. Employee also does not include full-time employees of a public authority who have completed their probationary periods in the classified civil service of the public authority, except such persons are employees if performing work outside the classification specifications of the civil service position for which the probationary period has been served. Employee does not include any person in a program administered by a public authority approved at the discretion of the director in writing prior to work on any project or program, including, but not limited to, local workfare or community action programs."

Ohio Adm.Code 4101:9-4-02(K) went into effect two years after the Supreme Court announced its decision in *Internatl. Union of Operating Engineers, Local 18 v. Wannemacher Masonry Co.*, 36 Ohio St.3d 74 (1988). In *Wannemacher Masonry*, the court held that the term "employee" did not encompass the term "employer" when the employer is a sole proprietor. In so holding, the court looked to the common usage of the terms employee and employer. It noted that *Black's Law Dictionary* 471 (5 Ed.1979) defined "employee" as "[a] person in service of another under any contract of hire, express or implied, oral or written where the employer has the power or right to control and direct the employee in the material details of how the work is performed. * * * One who works for an employer; a person working for salary or wages." *Wannemacher Masonry* at 76.

[15] The preamble to Ohio Adm.Code 4101:9-4-02 states: "The following definitions are provided for the purposes of clarifying the meaning of certain terms as they appear in sections 4115.03 to 4115.16 of the Revised Code and division-level 4101:9 rules of the Administrative Code."

we have set forth above, we find the remedies available to appellant under R.C. Chapter 4115 are inadequate to protect appellant's substantive right to receive prevailing wage.

### 3. **Jeopardy Element Met**

{¶ 55} Having found clear public policy articulated in R.C. Chapter 4115 protects the substantive right of employees to be paid prevailing wage, and that the remedies available in R.C. Chapter 4115 are inadequate to protect such substantive right, we find the jeopardy element has been met. As a result, we conclude the trial court erred in granting summary judgment in favor of Boss. Accordingly, we sustain appellant's assignment of error.

## IV. Conclusion

{¶ 56} Having sustained appellant's single assignment of error, we reverse the judgment of the Franklin County Court of Common Pleas and remand this matter to that court for further proceedings consistent with law and this decision.

*Judgment reversed;*
*cause remanded.*

MENTEL and BROGAN, JJ., concur.

BROGAN, J., retired, formerly of the Second Appellate District,
Assigned to active duty under authority of the Ohio
Constitution, Article IV, Section 6(C).